EMMA A. ALLEN v. H. T. DODSON, *as Sheriff, etc.*

1. ACTION, *How Dismissed.* An action cannot be dismissed by the plaintiff by entry to that effect on the appearance docket. It is in the nature of a judgment, and requires the order of the court.

2. SPECIAL FINDINGS — *Request Too Late.* A request to the court to state separately findings of fact and conclusions of law, is too late when made after the conclusion of the trial, and after a general finding has been announced.

3. HOMESTEAD RIGHT, *Not Destroyed by Grant of Right-of-Way.* A homestead right to the whole one hundred and sixty acres of land is not destroyed by the grant of a right-of-way through it to a railroad company, a part of which is an absolute grant, and partly the creation of an easement. Such a conveyance of the right-of-way does not operate to so divide the tract as to make the land lying only on one side of the right-of-way subject to the homestead right.

*Error from Butler District Court.*

ON the 13th day of March, 1886, *Emma A. Allen* filed her petition in the district court of Butler county, against *H. T. Dodson,* the sheriff of that county, to restrain him from selling on execution a certain tract of land situated in said county, and an undivided half of a lot in the city of Augusta; claiming the land as her homestead, it having been the homestead of her husband before her marriage, and having been purchased by her from him subsequent to the marriage. She had also purchased from her husband the undivided half of the Augusta city lot. The sheriff had levied upon said real estate and advertised it for sale on the 24th day of March, 1886,

by virtue of an execution to·him directed on a judgment in favor of one Wm. McGarry, against B. F. Allen, the husband of the plaintiff. This judgment was rendered at the January term, 1886, of the district court of Butler county, the term commencing on the 5th day of January, and the judgment probably rendered on the 19th day of that month. Emma A. Allen obtained a temporary injunction from the probate judge of Butler county, on the 13th day of March, and this temporary restraining order was dissolved and vacated by the judge of the district court, at chambers, on the 22d day of March, 1886. On the 24th day of March the plaintiff in error dismissed the action by entering on the appearance docket an order of dismissal in these words, [title of cause]: "This case is hereby dismissed without prejudice.—EMMA A. ALLEN, by her attorney." On the same day, but at a later hour, the defendant filed an answer, setting up three distinct defenses to the cause of action stated in her petition, claiming that at the time of the rendition of the judgment in favor of McGarry, the real estate levied upon was owned by B. F. Allen, and was not his homestead, and was bound by the lien of said judgment; that on the 13th day of January, 1886, he conveyed the same to one T. A. Kramer, and on the 20th day of January Kramer conveyed the same to Mrs. Allen, and that the same conveyances were made for the purpose of avoiding the payment of the judgment, and were without consideration, and were fraudulent and void.

At the May term of the court, and on the 12th day of that month, the case being upon the trial docket, the attorney of Mrs. Allen filed a written motion to strike the same from the trial docket, for the reason that it had been dismissed by the plaintiff on the 24th day of March, 1886, and was so dismissed before the answer of defendant was filed. This motion was overruled, and an exception taken. A motion to make the answer more definite and certain was filed, heard and overruled, and an exception noted to the ruling. A demurrer was then filed to the answer, and this was heard and overruled, and an exception saved. A motion was then made to strike

the case from the trial docket, and continue it until the next term of the court, for the reason that it was not at issue before the first day of the term, and this was overruled, and an exception noted. Trial was had on the 15th day of May, and after the evidence was all in, the court announced that the parties would be heard upon certain questions, and these being argued, the court rendered an opinion, and was then requested to make special findings of facts and conclusions of law; this request was refused, and an exception saved to the ruling. There was a decree for the defendant, setting aside the conveyances from Allen to his wife as fraudulent, as against McGarry, and subjecting all the real estate, excepting so much as lies west of the Florence, Eldorado & Walnut Valley Railroad, to sale on the judgment. The facts as disclosed on the trial are: that B. F. Allen, an unmarried man, (being a widower with one child,) was the owner of an undivided half, and was residing on the south half, of the southeast quarter of section twenty-one, and the north half of the northeast quarter of section twenty-eight, township eighteen, of range four east, in Butler county, on the 17th day of June, 1881. On that day he and his brother, who owned the other undivided half of said real estate, executed a right-of-way deed to the Florence, Eldorado & Walnut Valley Railroad Company, in the words and figures following, to wit:

"RIGHT-OF-WAY DEED.

"Know all men by these presents, that B. F. Allen, unmarried, and C. C. Allen, unmarried, of the county of Butler, in the state of Kansas, in consideration of the sum of two hundred and fifty dollars in hand paid by the Florence, Eldorado & Walnut Valley Railroad Company, a corporation duly organized under the laws of the state of Kansas, have bargained and sold, and do hereby grant and convey unto the said Florence, Eldorado & Walnut Valley Railroad Company, its successors and assigns forever, the following premises, situate in the county of Butler, in the state of Kansas, and described as follows: Commencing at a point where the center line of said railroad as now located crosses the south line of the north half of the northeast quarter on said south line one hundred and fifty feet; thence in a northeasterly course parallel to and

one hundred and fifty feet from said center line of railroad to a point two hundred and seventy feet south of north line of said quarter-section line; thence west one hundred feet; thence northeasterly parallel to and fifty feet from the center line of said railroad to the north line of said quarter-section; thence west along said section line one hundred feet; thence southwesterly parallel to and fifty feet from the center line of said railroad, as now located, two hundred and seventy feet; thence west one hundred feet measured at right angles; thence southwesterly parallel to and one hundred and fifty feet from said center line of railroad, as now located, to the south line of said north half of said quarter-section; thence east along said line to the place of beginning, containing eight and three-tenths acres, more or less. This land is to be used for depot, stock yards, and side tracks, and when no longer used for railroad purposes to revert to grantor. Also a strip of land fifty feet in width on each side of the center line of said railroad, as now located, across, over and through the south half of the southeast quarter, section twenty-one, township twenty-eight, range four east, situated in Butler county, Kansas, containing three and two-tenths acres, more or less: to have and to hold said premises, with the appurtenances, unto the said Florence, Eldorado & Walnut Valley Railroad Company, its successors and assigns, forever; and the said B. F. Allen and C. C. Allen, for themselves and heirs, do hereby covenant with said railroad company, its successors or assigns, that they are lawfully seized of the premises aforesaid; that the premises are free and clear of all incumbrances whatsoever, and that they will forever warrant and defend the same, with the appurtenances, unto the said Florence, Eldorado & Walnut Valley Railroad Company, its successors and assigns, against the lawful claims of all persons whomsoever.

"In testimony whereof, the said B. F. Allen (unmarried) and C. C. Allen (unmarried) have hereunto set their hands, this 17th day of June, 1881.        B. F. ALLEN.
                                        C. C. ALLEN."

In October, 1881, B. F. Allen was married to Emma A. Cease, a widow with two children, who owned a farm adjoining his. She was the statutory guardian of the children. Before the marriage, in 1880, she had sold to Allen corn and stock to the amount of $150. In September following he borrowed from her $250; the same fall he bought from her

2250 bushels of corn at 53 cents per bushel, amounting to $1,192.50; the next year he bought 2500 bushels of corn from her at 25 cents per bushel, $625. In the fall of 1883, he bought from her 250 bushels of wheat at 80 cents per bushel, $200. For this borrowed money and grain he executed his notes and delivered them to Mrs. Allen, who held them until sometime in July, 1885, when they were surrendered to him in consideration of a deed executed by him to her, conveying to her the property heretofore described. There was a mistake in this deed, and the deed to T. A. Kramer on the 13th day of January, 1886, and from Kramer to her on the 20th of January, 1886, were made to correct this mistake. Mrs. Emma A. Allen, with her children, husband, and his child, have been living on the farm conveyed to her by Allen, since the 19th day of December, 1886, and she claims it as her homestead; her husband with his child having resided on it for a long time before the marriage and the conveyance to her.

*E. N. Smith*, for plaintiff in error.

*Shinn & Yeager*, for defendant in error.

Opinion by SIMPSON, C.: I. The first contention of counsel for the plaintiff in error is, that the action was dismissed before the filing of the answer, by an entry on the appearance docket of an order to that effect, and that at any time before an answer is or ought to be filed, the plaintiff has a right to dismiss his action. This involves a construction of § 397 of the code, and it will be noticed that the sections with reference to a dismissal of a case form a part of the article on judgment. It is true that an action may be dismissed by the plaintiff without prejudice to a future action, at any time before the final submission of the case to the jury or to the court, where the trial is by the court; but as the dismissal is in the nature of a judgment, (*Brown v. Mining and Smelting Co.*, 32 Kas. 528,) and may or may not be the final disposition of the case so far as the plaintiff is concerned, it must necessarily require an order of the court, and cannot be accomplished by the mere

act of the plaintiff alone. If it is desired to dismiss without prejudice to a future action, how can an entry of that kind be made on the journal of the court without the active intervention of the court itself ? The law requires the clerk of the district court to keep an appearance docket in which are entered the names of parties to an action, the time of the commencement thereof, and other necessary entries. So a trial docket is required to be made out, and there are certain mandatory provisions respecting it, controlling the clerk, and prescribing his duty. When an action is properly entered on these dockets, it does seem as if it would be a construction dangerous in tendency to hold that these dockets could be made, altered, or changed by the mere act of one or both parties to suits thereon. The safer construction is to require that actions be disposed of only by a judicial act. These dockets are to be controlled in some respects by the statutory provisions regarding them, and by the orders of the court in others. We think that the order entered by the plaintiff in error on the appearance docket did not have the effect to dismiss the case, and that there was no error in the rulings of the court in regard to it.

II. The next complaint is, that the answer of defendant did not present any set-off or counterclaim, and that the motion to dismiss ought to have been sustained for that reason. Conceding that the court on the application of the plaintiff ought to have dismissed the action so far as the plaintiff is concerned, we are all of the opinion that the answer of the defendant did plead a counterclaim, and that the motion to dismiss was properly overruled. The plaintiff alleged in her petition that she was the owner of certain real property; that she had purchased it from B. F. Allen, and was residing on it as a homestead; that it was his homestead before she purchased it; that the defendant as sheriff was about to sell it on an execution issued on a judgment against B. F. Allen. She prayed for a temporary injunction restraining the sale; and a decree on final hearing adjudged her the absolute owner. The defendant denied her homestead rights as well as those of B.

15—39 KAS.

F. Allen; alleged that the sale by Allen and the purchase by her were fraudulent, and made with the intent to prevent the collection of the judgment of McGarry *v.* Allen; prayed that these conveyances be declared fraudulent and void as against McGarry as a creditor of Allen; and that the real property in controversy be subjected to the payment of the McGarry judgment. The defendant asked certain affirmative relief as against the claim alleged in the petition of the plaintiff, and just such relief as he was entitled to if the facts justified the court in granting it; otherwise he would have to sell, take a sheriff's deed, and commence his action to set aside these conveyances as fraudulent as against the creditors of Allen. We think the court ruled right on this question. Under the terms of the motion made to dismiss because of the entry on the appearance docket of the 24th day of March, the ruling of the court was correct in all respects. The plaintiff in error did not ask a dismissal of the case generally, but based his claim for dismissal on the action of the 24th of March solely, and on the motion thus restricted, the ruling was necessarily right. Section 398 of the code expressly provides, " In any case where a set-off or counterclaim has been presented, the defendant shall have the right of proceeding to the trial of his claim, although the plaintiff may have dismissed his action or failed to appear." If the plaintiff in error in term-time had made an application to dismiss the action, and such application had been granted by the court, instead of trying to enforce the attempt to dismiss by entry on the appearance docket, then the defendant in error would have the right under this section to have his counterclaim heard, although the plaintiff's cause of action had been dismissed by an order of the court; but as there was no dismissal, there was no error in any of the rulings of the court in this matter.

III. It is claimed that the court erred in not making special findings of fact and separate conclusions of law, as requested by the plaintiff in error. The statute requires the court to state its findings at the request of one of the parties to the action, but that request must be made at such a time

and at such a stage of the proceedings as to give the court a fair opportunity to comply with it.    It is said in *Wilcox v. Byington*, 36 Kas. 212, that the prevailing practice is to make the request either before or at the conclusion of the argument. It is held in *Smythe v. Parsons*, 37 Kas. 79, that after the general finding is made, it is too late to make the request.    In this case, after the evidence closed the court announced that it would hear the parties on the question of homestead, and the effect of the right-of-way deed upon it; and after hearing the argument, said it was of the opinion, and found, that the deed to the railroad separated the land.    Then the plaintiff in error asked the court to make special findings of fact and conclusions of law, and this the court refused to do, for the reason among others, that the trial was concluded before the request was made.    We think there was no error in this, under the circumstances.

IV.   The next disputed question is as to the homestead rights of Mrs. Allen in the land.   It is conceded that a part of the land was her husband's homestead, and became hers by purchase and occupancy; but it is contended that the grant of the right-of-way to the railroad company so segregated the tracts on each side thereof, that only the part of the land upon which is situated the dwelling house can be claimed under the homestead law.   The right-of-way was granted by deed, and as to a part of it.    There can be no doubt but that it is an absolute grant, without reservation or qualification of any kind whatever.    As to the other part, this language is recited in the deed, that "this land is to be used for depot, stock yards and side tracks, and when no longer used for railroad purposes, to revert to the grantor."    In construing these words so as to determine the character of this conveyance, reference must be had to the condition of affairs existing at the time they were used, to arrive at the intention of the grantors, as well as to the peculiar use to which the land was to be applied. It is evident from the description of the land in the right-of-way deed, that at the time of the execution of the conveyance the railroad company had already located its line.    This may

have been done in pursuance of some previous agreement of the grantors with the company. In addition to the ordinary right-of-way of one hundred feet in width, the company wanted land for depot, stock yards and side tracks, and it is with reference to these things particularly that the qualifying words are used. The line of road, as located, enters the farm at the southern boundary, and running north for more than two-thirds of the way at the ordinary width of one hundred feet, then widens in order to give room for the erection of a depot, stock yards and side tracks. With respect to the right-of-way running north until it reaches the point where it begins to widen, there are no reservations or conditions imposed by the conveyance. For this part of the right-of-way there seems to be an absolute and unqualified grant, but as to the remainder, involving more than eight acres, it seems from the language used and the circumstances attending its expression, that the true intent and meaning of the conveyance was to grant only an easement. The condition being annexed to the wider part and an absolute conveyance having been made to the other, it is evident that they did not intend to make an absolute grant as to that. We think it will better accord with the real intention of the parties to hold that, as to the northerly part of the right-of-way, including the land granted for depot and the other enumerated purposes, only an easement was created. Giving the conveyance the construction and effect that the absolute conveyance of the right-of-way extended only a part of the way through the land, and that there was an easement as to the remainder, it would not have the effect to so divide or segregate the land that the homestead right could not apply to the whole tract, because, with the deeded part detached, the residue is connected and contiguous, and can all be claimed and held as a homestead. This land was the property of B. F. Allen, and was conveyed by him to the plaintiff in error, at a time when he occupied it as a homestead. The conveyance of a homestead cannot defraud creditors, as under no circumstances can it be subjected to the payment of their debts, except a lien therefor has been duly created by the act of the

owners. This has been repeatedly declared by this court in a number of cases, so that there could be no pretense of fraud based upon the conveyance of his homestead, by B. F. Allen to his wife.

It was material error to hold that the right-of-way conveyed to the railroad company, operated to so divide the land that only that part lying west of the railroad could be held as a homestead; and it was equally erroneous to hold that the conveyance of the homestead of Allen to his wife was fraudulent as to creditors. It seems from the evidence embraced in this record, that a *bona fide* indebtedness by Allen to the plaintiff in error, accruing both before and after the marriage, was rather conclusively established, and that the circumstances against it were slight and trivial; but for the errors already enumerated, the case will have to be reversed, and a new trial granted, and this question can then be fought over.

It is recommended that the judgment of the district court be reversed, and a new trial granted.

BY THE COURT: If the deed from B. F. Allen and C. C. Allen to the railroad company be construed as in the foregoing opinion, then the judgment of the court below must be reversed; for a homestead right, under the homestead exemption laws, may include land separated into parts by an easement. We think the decision in the case of *Randal v. Elder*, 12 Kas. 257, 261, fully and correctly states the law with reference to the unity of the homestead, and also when it may include land separated by other interests. The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.