THE CITY OF OTTAWA V. S. B. ROHRBOUGH.

COUNTY BOARD, *Not to Vacate Street.* The board of county commissioners has no power to vacate a street in a city of the second class by virtue of chapter 115a, Comp. Laws of 1885.

*Error from Franklin District Court.*

THE opinion states the facts. Judgment for defendant *Rohrbough*, at the October term, 1887. The plaintiff *City* brings the case here.

*C. A. Smart,* and *H. A. Richards,* for plaintiff in error; *H. C. Mechem,* of counsel.

*C. B. Mason,* and *F. A. Waddle,* for defendant in error.

Opinion by SIMPSON, C.: This is a controversy submitted to the district court of Franklin county under § 525 of the code. The agreed case, containing the facts upon which the controversy depends, is as follows:

"1. On August 29, 1870, Albert W. Shaw and Henry H. Ludington filed in the office of the register of deeds of said county a plat of a certain tract of land in section 25, township 16, of range 19, which plat was entitled 'Shaw & Ludington's Main street addition to the city of Ottawa, Kansas,' said plat being duly acknowledged and certified as required by law, and designating thereon all the streets, alleys, lots and blocks in said addition. A copy of said plat is hereto attached, marked 'A,' and made a part of this agreed statement.

"2. The said addition contained, among other streets, a street designated on said plat as 'Massasoit street,' extending east and west across said addition; which street was of the width of sixty feet from Main street on the east of the right-of-way of the L. L. & G. Railway Company, as shown by exhibits A–1 and A–2.

"3. In 1871 the said addition was duly accepted as a part of said city, as a part thereof; and the territory embraced in said plat has ever since remained within the incorporate limits, said city being ever since the year 1867 a city of the second class.

"4. That the 8th day of April, 1878, George W. Hamblin, (having been the owner of said addition from March 27, 1877,) then being the owner, petitioned the board of county commissioners of said county of Franklin to vacate all streets and alleys in said addition.

"5. On the 8th day of April, 1878, the board of county commissioners granted the petition in part, to wit, 'vacating all streets and alleys in said addition north of the north line of Powhattan street, and west of the west line of Main street.' A copy of the order of vacation by said board is hereto attached, marked 'B,' and is made a part hereof.

"6. On the 14th day of May, 1884, a copy of the said proceedings of said board of county commissioners was filed and recorded in the plat-book of the towns and cities, in the office of the register of deeds of the said county, and said streets in said addition marked 'vacated' on said recorded plat.

"7. On December 15, 1879, the said George W. Hamblin and his wife sold and conveyed to Willis Johnson the following-described portion of said addition, to wit, the north half of the following-described piece of land: Commencing at the southeast corner of lot number 35, block 3, of Shaw & Ludington's Main street addition to Ottawa, (streets and alleys vacated,) and running thence north one hundred feet, thence west to west line of said addition, thence southeasterly to southwest corner of lot 35, block 4, thence east to place of beginning.

"8. On January 14, 1880, Willis Johnson and wife sold and conveyed by same description, the above-described premises to S. E. Rohrbough.

"9. The above-described premises included a strip fifty feet in width from Main street on the east, and extended west across said addition to the right-of-way of the L. L. & G. Railroad Company, and lies within the boundary-lines of Massasoit street, named in exhibit 'A.'

"10. In the summer of 1877 the whole of said addition lying north of Powhattan street, and then being owned by said Geo. W. Hamblin, was inclosed and cultivated as a field; on the east side trees were planted; on the west side of Main street across all streets north of said Powhattan street and east of King street, Massasoit street to Main, has ever since remained unopened and obstructed by improvements; while that portion of Massasoit street west of King street has for

several years past remained uninclosed or obstructed until as stated, as follows:

"11. That by an ordinance of said city dated September, 1885, a sidewalk was required to be constructed on the west side of King street, and the defendant on or about the first day of November, 1885, constructed a sidewalk in front of the premises claimed by him, situated on the west side of King street, and also on the west side of such sidewalk built a firm and substantial post-and-board fence, thereby obstructing Massasoit street, if any street there be running from King street to said railroad right-of-way, to the damage of said city (if illegal) in the sum of one dollar.

"12. From and ever since the assessment and collection of taxes in the year 1880, the premises have been subject to taxation, described as follows: Commencing five feet north of the northeast corner of lot 37, in block 3, north fifty feet, west to railroad right-of-way, south to a point five feet north of the northwest corner of lot 37, in block 4, thence east to the beginning; and so remains upon the tax duplicate, which said description includes that portion of Massasoit street claimed to be obstructed.

"13. From the year 1881, all the streets except Massasoit street in said addition have been opened and unobstructed, and sidewalks and improvements of said unobstructed streets been made and ordered from time to time by the corporate authorities of the city of Ottawa."

The trial court rendered a judgment in favor of the defendant, and the city brings the case here for review. It appears that in 1867 the city of Ottawa become a city of the second class; that in August, 1870, Shaw & Ludington platted an addition thereto, and in 1871 this addition became a part of the city. George W. Hamblin, having become the owner of said addition, did, on the 8th day of April, 1878, petition the board of county commissioners of Franklin county to vacate all streets and alleys in said addition; this petition was granted in part, by vacating all streets and alleys in said addition north of the north line of Powhattan street and west of the west line of Main street. This order of vacation was filed and recorded in the plat-books of towns and cities in the office of the register of deeds of said county, and this part of the addition marked "Vacated" on the 14th day of May, 1884. On the 15th day

of December, 1879, Hamblin and wife conveyed the premises in controversy to Willis Johnson, and on the 14th of January, 1880, Johnson and wife conveyed them to the defendant in error. They include fifty feet in width of Massasoit street, and on the west line of the premises on that street the defendant in error built a substantial post-and-board fence, thereby obstructing the street. In September, 1885, a sidewalk was required by the city to be constructed on the west side of King street, and the defendant in error constructed a walk in front of the premises claimed by him. In the summer of 1877 the whole of said addition lying north of Powhattan street was inclosed and cultivated as a field, and trees planted along the west side of Main street and across all streets north of Powhattan. Since 1880 the land has been assessed for taxation by metes and rounds as in the conveyance to Johnson and Rohrbough.

It is claimed by the city that the board of county commissioners had no power or authority to vacate that part of the addition; and this is the only question in the case. Whether the board had or not, depends upon the construction to be given to chapter 115a, Comp. Laws of 1885, an act providing for the vacation of streets, alleys and other public reservations. The particular act complained of is the obstruction to Massasoit street by the erection of the fence, and our remarks are to be confined to the question of the legality of the vacation of that street. The chapter of the Laws of 1885, now under consideration, repeals in express terms chapter 155, Laws of 1873, and article 3 of chapter 109, Gen. Stat. of 1868. The repealed chapters were an act vacating town-sites, and an act to vacate town-sites and additions thereto. The act of 1868 recited that—

"All lands which have been either by individual owners, town companies, or other incorporated bodies, set apart, surveyed, laid out, or platted into towns, cities, or villages, or additions thereto, but upon which in fact no town, city or village shall have been or exists, but are unoccupied for the purposes of a town, city, or village, are hereby declared to be vacated as such," etc.

Another section provides a mode of procedure by which it can be determined whether or not a town-site comes within the provisions of the section above quoted. That proceeding was by petition by the owners to the board of county commissioners. A notice published for three weeks, stating that on a certain day an inquiry and determination will be made by the board. A descriptive map, filed by the board with the register of deeds, showing the land vacated. The act of 1873 provided by the first section that—

"All lands which have been subdivided into lots and laid off and platted as town-sites or additions thereto, whether belonging to the original owner or their assigns, and unoccupied for the purposes of a town or addition thereto, the streets and alleys therein may be vacated as provided in section two." That section reads as follows: "The county commissioners upon being satisfied by the owner or owners, by affidavit or otherwise, that they are the only interested parties therein, shall cause the word 'Canceled' to be written upon the margin of such record in the office of the register of deeds."

These two acts remained in force until the act of 1876, being chapter 115a, Comp. Laws of 1885, was passed, it being in our judgment a substitute for the proceedings required by both of these acts. We gather this not only by reason of the express repeal of the former statutes, but by the object, reason and letter of the statute we are considering. The word town-site, used in this act, is explained by reference to the repealed statutes. It means a tract of land subdivided into lots and blocks by streets and alleys, that has never been improved by occupancy or buildings, or has been so partially improved, but not to the extent as would authorize the organization of a city, town, or village. There being no corporate authorities, the power to vacate the streets, alleys and public reservations is vested in the board of county commissioners. In an organized city, town, or village, the power to vacate streets and alleys has been invariably vested in the city and town authorities, usually, if not uniformly, in the council. This has been a universal rule with the legislature of this state, at least ever since the passage of the act to incorporate cities of the state of Kansas, passed

17—42 KAS.

in 1862, (ch. 46, Comp. Laws of 1862.) It will be noticed that chapter 115a does not treat of streets and alleys in cities of either class. At the time it took effect (1876), all municipal corporations of this state were cities of the first, second or third class, the latter class embracing what before had been denominated as towns and villages. The first act providing for cities of the third class was passed in 1869. The act does not therefore in express terms, or by necessary implication, embrace cities of either class. We conclude, therefore, that the laws in force vest in the city council of cities of the second class the power to vacate streets and alleys in said cities, and vest in the board of county commissioners the power to vacate streets and alleys in tracts of land subdivided and platted as town-sites, but which have never been improved by occupancy to an extent that would warrant an organization under any of the statutes as cities, towns, or villages.

This construction obviates all conflict between the city authorities and the board of county commissioners; gives the city that measure of control of its public streets so often declared by this court, without interference by the other tribunal; and conforms to the accepted theory of county and city control. We think that the board of county commissioners did not have the power to vacate Massasoit street, in the city of Ottawa, it being a city of the second · class; that the street is illegally obstructed; and recommend the judgment of the district court be reversed.

By the Court: It is so ordered.

All the Justices concurring.