WILLIAM GRISWOLD *et al.* v. W. J. HUFFAKER.

HOMESTEAD — *What Constitutes—Highway—Dedication—Estoppel.* The owner of a strip of land whose acts have been such as to estop him from denying that it is a public road, and have induced the public to use it as such, and have caused the officers of the township and the overseer of the road district in which it is situate to work and improve it, is entitled to hold as a homestead a tract of land on both sides of such strip of land consisting of less than 30 acres.

*Error from Wyandotte District Court.*

ACTION by *W. J. Huffaker* against *Wm. Griswold* and *Thomas Bowling,* as sheriff of Wyandotte county, to enjoin

the sale of certain land. Judgment for plaintiff. Defendants bring error. The facts are fully stated in the opinion.

*Hutchings & Keplinger*, for plaintiffs in error.
*McGrew & Watson*, for defendant in error.

Opinion by SIMPSON, C.: The plaintiff in error, Griswold, being a judgment creditor of the defendant in error, had an execution issued and levied upon 4½ acres of land belonging to the defendant in error. The sheriff of the county being about to sell the land, the defendant in error commenced this action in the district court of the county to enjoin the sale, and at the trial recovered a judgment perpetually enjoining the sale of said land. The object of this proceeding is to reverse said judgment. The sole question for solution is, whether or not the land levied upon was at the time of the levy a part of the homestead of the defendant in error, and hence not subject to levy and sale by reason of the constitutional exemption. The land of the defendant in error consists of about 26 acres, and is divided by a street, or a public highway, running through it, so as to cut off the 4½ acres from the larger tract, that contains the dwelling-house and out-buildings on the east side of the street or highway. The case was tried below on an agreed statement of facts, in the words and figures following, to wit:

"The injunction asked for by plaintiff should be denied, unless the premises about to be sold were a part of the homestead of the plaintiff at the time of the levy. Whether said premises were a part of plaintiff's homestead at the time of the levy depends upon the following: (1) In 1860 the owners of a large tract of land, of which the land of plaintiff hereinafter mentioned is a part, laid the same out and subdivided it into lots, blocks, streets, and alleys, and platted, acknowledged and recorded the same as the town-site of Quindaro, among which streets was Kansas avenue, of the width of 90 feet; (2) thereafter the plaintiff became the owner of a tract of a little over 20 acres, lying on the east side of and abutting upon one of the streets in said town-site named 'Kansas avenue,' and at the same time he became the owner of about 4½ acres of land lying and abutting upon the west side of said

Kansas avenue, directly opposite the tract of about 20 acres before mentioned.    The 4½-acre tract above mentioned is the same tract of land that the sheriff is alleged to be about to sell.    On the 30th of August, 1873, a petition signed by Eben Blackly, also plaintiff and eight others, was filed in the office of the county clerk of Wyandotte county, in the following language:

"'*To the Honorable Board of Commissioners of the County of Wyandotte, State of Kansas:*

"'THE UNDERSIGNED represent respectfully that they are the owners of a large majority of all the lots and blocks within the following-described boundaries in the town of Quindaro, in said Wyandotte county, to wit: [Here follows a lengthy description of land, which includes the lands of plaintiff above mentioned.]    Also, that said lots and blocks within said boundaries are not occupied for the purpose of a town or village, and they therefore pray that said lots and blocks and the streets and alleys along said boundaries be vacated, with the following exceptions, which we petition to be declared public highways, to wit: [Here follows a lengthy description of streets and alleys, among which was the following portion of Kansas avenue, to wit: Sixty feet on the west side of Kansas avenue from Walnut avenue to Seventh street, which includes that portion of Kansas avenue which lies between and contiguous to the two tracts of plaintiff's land above mentioned.]

(Signed)                            EBEN BLACKLY, for himself, and as President of the Board of Trustees of the Freedman's University.
                                                    W. J. HUFFAKER.
                                                    WM. T. BOWEN.
                                                    S. D. STORRS.
                                                    E. J. EBY.
                                                    D. W. MOUNT.
                                                    BIRD BARNETT.
                                                    JOSEPH ENDICOTT.
                                                    J. W. LEWIS.'

"Which petition was duly verified by affidavit, showing that said petitioners were the owners of a majority of the lots and subdivisions in said town-site concerning which said action was sought to be taken.

"Afterward, on September 2, 1873, a notice, of which the following is a copy, excepting the boundaries and streets and alleys therein named, which are the same as in said petition, was filed in the office of the clerk of said county, to wit:

"'NOTICE.

"'Notice is hereby given, that a petition will be presented to the board of commissioners of the county of Wyandotte and state of Kansas, at their regular meeting in September, 1873, to vacate the blocks, lots, streets and alleys in the town of Quindaro, included within the following boundaries, to wit: [Here follows description, the same as in the petition above mentioned,] with the following exceptions of streets and alleys, which will be declared public highways, to wit: [Here follows description of streets and alleys, the same as in the petition above mentioned.]              (Signed)        W. J. HUFFAKER,
                                *One of the Principal Petitioners.*'

"Attached to which notice was an affidavit of R. B. Taylor, in due form, showing that said notice had been duly published four consecutive weeks·in the *Wyandotte Gazette,* a newspaper published and of general circulation in said county.   Also on the same day, to wit, September 2, 1873, there was filed in the office of the clerk of said county aforesaid a similar notice, except that the copy so filed was not signed with due proof that the same was duly posted on said premises for more than three weeks.   There is no evidence in the records of the board of county commissioners of said county that either of said notices was ordered by said board, or that said petition was ever brought to the·notice of said board prior to September 2, 1873. On August 7, 1873, the following, among other proceedings, were had before the board of county commissioners of Wyandotte county, as shown by the record of the proceedings of said board : 'On motion the board adjourns to meet on Monday, the 1st day of September, 1873.'   On Monday, September 1, 1873, said board met and transacted business, but did not take any action in regard to the said petition,.or in regard to the vacation of any portion of the town-site of Quindaro, and adjourned until the next day.   On Tuesday, September 2, 1873, said board met, and among other transactions were the following, as shown by the record of said board : 'On motion, the board, after hearing the petition of E. Blackly and the evidence of several witnesses in the matter of vacating certain lots, streets and alleys in Quindaro, continued the same until to-morrow at 1 P.M.'   September 3, 1873, the following among other proceedings were had, as shown by the record of said board : 'At this day, the petition of Eben Blackly, for himself and as president of the board of trustees of the Freed-man's University, W. J. Huffaker, and others, representing that they are the owners of a large majority of all the lots and blocks within the following-described boundaries in the town of Quindaro, in said county of Wyandotte, to wit: [Here follows description as in the petition.]   Also said lots and blocks within said boundaries are not occupied for the purpose of a town or village.   And they therefore pray that said lots and blocks and streets and alleys within and along said boundaries be vacated, with the following exceptions of streets and alleys, which we petition to be declared public highways, to wit: [Here follows a list of streets and alleys as in petition, among which is that portion of Kansas avenue before mentioned, which separates said tracts of plaintiff.]   The board, after

hearing the evidence in favor and against the proposed vacation, the parties interested compromise the matter by signing the following agreement:

"'It is hereby agreed by and between the parties hereto, and the undersigned, being all the parties interested in the vacation, that 10th street, 30 feet wide through the center, shall be left open from F street to the east side of X street, and vacated from T street west to Kansas avenue; that Creek shall have an alley 16 feet wide between V and W streets, through the center of the block, instead of an alley from 10th to 9th, and from 9th to alley between W and X, thence along the same to 8th street, which shall be vacated, and all opposition to vacation is withdrawn.                                           PHILLIP CREEK.
                                          EBEN BLACKLY.
                                          W. J. HUFFAKER.
                                          ADAM BARNETT.
                                          THOMAS BURNES.
                                          CHAS. MORASCH.
                                          CHAS. McGEARY.'

"On motion, the attorney was given until the November meeting to prepare the order of vacation, and to obtain the necessary description of the land vacated. On the 9th of October, 1873, the following proceedings were had before said board, as shown by the record thereof:

"'In the matter of the vacation of the town-site of Quindaro, continued from last term: And now on this day come the parties and present their several petitions to the board, together with their agreement, signed by all the parties; and it being shown to the board that all the parties in interest have had due notice and consented to the same, and that the law relating thereto has in all respects been complied with, and that said proceedings are regular and correct, it is therefore ordered, adjudged and decreed by the board that the prayer of said petitioners be granted, and that the several portions of said town-site of Quindaro and the additions thereto be and the same is now by said board in open and regular session declared vacated; and that the same shall hereafter be known, designated and described by metes and bounds in the manner following: [Here follows description by metes and bounds of a large number of tracts, including the land of the plaintiff described in his petition herein.] And it is further ordered, that the clerk enter upon the proper books of the county this order, and upon the tax rolls the description herein set forth, and furnish a copy of the same to the register of deeds for record.'

"The above are all the orders made and proceedings had by said board in said matter. Save as above set forth, the board of commissioners never made the certificates provided for in § 24, chapter 109, General Statutes 1868; nor is there any evidence that the certificates or descriptive map provided for in the same section were ever filed in the office of the register of deeds of Wyandotte county. Ever since the proceedings and orders above set out by and before the board of county commissioners of said county, 60 feet off the west side of what

was designated as Kansas avenue on the plat of the town-site of Quindaro aforesaid have been used as a public highway, and have been worked and kept in repair by and under the super-vision of the road overseer of road district number ——— of the township of Quindaro (within the limits of which the same is situated) and the township officers of said township, the same in all respects as other roads and highways in said road dis-trict. The lands within the limits of said town-site of Quin-daro have ever since said proceedings and orders above set out been occupied and used as farming lands, and in no respect have been occupied, used or treated as town lots, or for any purposes of a town or village. The plaintiff is a citizen of the state of Kansas, and the head of a family; and ever since said proceedings for the vacation of said town-site has used and oc-cupied all the land described in his petition herein for farming and gardening purposes, the house where he has remained with his family being upon that portion lying east of what was for-merly Kansas avenue above mentioned, and all of said land is and was at the time of the levy of said execution used and occu-pied by said plaintiff and his family as a homestead, unless the character of the highway above mentioned, formerly known as Kansas avenue, is and was at the time of such levy such as to deprive said plaintiff of his homestead rights in that portion lying west of said highway."

It appears from the agreed statement of facts that in 1860 the plat of Quindaro town-site was filed in the office of the reg-ister of deeds of Wyandotte county, and that the strip of ground that now separates the land of the defendant in error into two parts was one of the streets dedicated by that plat, and was known as Kansas avenue, and was described as being 90 feet in width. If it is still a street, with the fee vested in the county, it is such a segregation of the four and one-half acres from the larger tract that the two cannot be included in and constitute one homestead. (*Randal v. Elder*, 12 Kas. 257.) If it is not a street, but has been vacated by the express terms of a legis-lative act or by proper proceedings before a tribunal having power to declare a vacation, and is a highway laid out by proper authority, or created by user, and is an easement rest-ing on the land by either of the creative modes, then the de-fendant in error is entitled to hold and enjoy the land on both

sides of the highway as a homestead. (*Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kas. 516.) In 1860 the strip of ground in question was a public street, but the defendant in error claims, first, that it was vacated as a public street by the express terms of an act of the legislature entitled "An act to repeal an act entitled 'An act incorporating the city of Quindaro,' approved January, 1859, and all acts or parts of acts amendatory or supplemental thereto," approved March 6, 1862, and found on page 407, General Statutes of 1862. Such act reads as follows:

"SECTION 1. That an act incorporating the city of Quindaro, approved January 25, 1859, and all acts or parts of acts amendatory or supplemental thereto, are hereby repealed.

"SEC. 2. That nothing in this act shall affect or interfere with the rights acquired by individuals or companies under the said act of incorporation, and no road, street or alley laid out or established under the act aforesaid shall be vacated except by the provisions of an act entitled 'An act vacating streets and alleys,' approved February 25, A. D. 1862.

"SEC. 3. That it shall be the duty of the trustee of Quindaro township, to take immediate possession of all books, papers, assets and property of every kind belonging to the city of Quindaro, dispose of the same and discharge the indebtedness of said city. In the performance of these duties he shall have and may exercise all the powers of the officers provided for in the act of incorporation aforesaid."

Waiving the discussion of all doubtful questions about the constitutionality of this act, or the power of the state legislature to pass it, we need only state that it is, or might be, claimed that the first section of the act, by its terms, vacates all streets and alleys, as well as lots and blocks, in the townsite of Quindaro, except those especially saved in the second section, and that the excepted ones consist of those in which vested rights might have been acquired by the purchase of lots and blocks for residence and business purposes, bounded by such streets and alleys. Again, it is contended that the excepted ones in the second section are only such streets and alleys as may have been laid out under and by virtue of the powers granted the common council of the city of Quindaro

under the act of 1859 incorporating the city. On the other side, it is contended that the disincorporating act of 1862 did not by its own terms vacate any of the streets and alleys, but left them to be vacated under the provisions of a general law in force at that time, mentioned in the second section, and as that law is still in force, or was in 1873, that no vacation could be had except under its provisions. Another contention is, that the street was vacated by the express terms of section 23 of article 3 of chapter 109, General Statutes of 1868, which is as follows: •

"SEC. 23. All lands which have been, either by individual owners, town companies or other incorporated bodies, set apart, surveyed, laid out or platted into towns, cities, or villages, or additions thereto, and descriptions or plats of which may have been made or recorded according to law, but upon which in fact no town, city or village shall have been erected or exists, but which lands so subdivided and platted are unoccupied for the purposes of a town, city, or village, are hereby declared to be vacated as such, and the streets, alleys and lanes shall revert to the owners of the lots platted upon them, in due proportion, and the public grounds to the owners; and all surveys and plats for the subdivision of such lands are declared null and void, and the lands hereby restored to their original condition under the surveys of the United States government, as if no platting for a town had taken place."

Now, it is said that the condition of things required by the foregoing section existed with reference to the Quindaro town-site, and that therefore this section ipso facto reinvested the fee to Kansas avenue in the abutting owners from the 31st day of October, 1868, this being the date at which the act and section above quoted became a law. But whether such a condition of things existed with reference to the Quindaro town-site must be determined in accordance with § 24, which reads as follows:

"SEC. 24. For the purpose of deciding the question whether lands, to which the provisions of the preceding section are sought to be applied, come under its intent, the following procedure shall be complied with, viz.: Upon the written petition of any one or more persons, who, by by their affidavit, repre-

sent that they are the owners of a majority of the lots or subdivisions of the town-site, concerning which action is to be taken, the county board of the county in which the lands may be shall advertise, in some newspaper published in the county, and by public notice posted on the land itself, for at least three weeks, that such application has been made, and that, on a stated day, the board will take testimony regarding the occupancy of the lands described; and upon the day fixed in such advertisement, shall so proceed to take testimony. If it appear to the county board, upon the day of hearing, that no inhabitants owning any of the soil, and dwelling upon any definite pieces or parcels of the land, of the quantity of five or more acres in a body, protest against it, then the board shall make its certificate, declaring the provisions of the preceding section duly applied to the land so surveyed, platted, or subdivided, and upon a plainly drawn lithographic map of the whole land, as presented to it for investigation, denote and mark the portions of the survey or subdivision of which, by the application of the preceding section, it has vacated. The county board shall then file such certificate and descriptive map in the office of the register of deeds of the county, and thereafter such land shall be taxed by appropriate description in acres."

It will be noticed from the agreed statement of facts that certain persons attempted to have the action of the board of county commissioners on this question. They filed a petition on the 30th day of August, 1873, with the county clerk, in substantial conformity to the requirements of this section. They caused a notice to be filed with the county clerk, accompanied by proof of its publication in a weekly newspaper, of general circulation in the county, that their petition would be presented at the regular meeting of the board to be held in the month of September, 1873. On the same day, to wit, the 2d day of September, 1873, there was filed in the office of the county clerk a similar notice, but it was not accompanied by any proof that the same had been duly posted on the premises, as the law required. There is no evidence in the record that either of said notices was ordered by the board, or that said petition was ever brought to the notice of the board prior to September 2, 1873. On the 3d day of September, 1873, the

order of vacation was made, as recited in the agreed statement of facts, but the board never made the certificate required by the section, and neither the certificate nor the descriptive map was ever filed in the office of the register of deeds, but 60 feet off the west side of said street have been used by the public and kept in repair by the road overseer of the district ever since such proceedings were had by the board of county commissioners, and the lands within the limits of the town-site of Quindaro have, ever since said proceedings, been occupied and used as farming lands, and in no respect have been used as town lots, or for any of the purposes of a town or village. Another vigorous contention of the plaintiff in error is, that no legal notice was given of the presentation of the petition to vacate. The law requires the board of county commissioners to advertise in some newspaper published in the county, and by public notice posted upon the land itself, for at least three weeks, that such an application has been made, and that on a stated day the board would take testimony regarding the occupancy of the lands described. The notice in this case was published in a newspaper, but was not ordered by the board, and was signed by the principal petitioner. Another contention is, that no certificate and descriptive map have been filed in the office of the register of deeds by the board of county commissioners; but it is said against such a claim, that it will not be seriously contended that the failure of the board to perform a plain duty required by law will be chargeable to the petitioners for vacation, they having performed every act required of them, especially when that failure did not or has not in any manner prejudiced the existing rights of the party complaining, who at no time, so far as the record discloses, had any interest in the vacation proceedings.

All these questions have received careful consideration, and yet we think the true solution of the question involved can be determined more satisfactorily, and on a more intelligible basis, by noticing other questions that arise upon the agreed statement. The plaintiff in error in this case has an execution levy on these 4½ acres of ground. If his lien ripens into a

sheriff's deed, he takes by that only such title and interest as Huffaker had at the time the judgment became a lien on the land. Now, at the time of this levy, what was the legal attitude of Huffaker with reference to this strip of ground? Had not Huffaker's acts estopped him from denying that it was a public highway? He was one of the principal petitioners, and gave the notices in the proceedings before the board of county commissioners, and in accordance with the rule established by this court in the case of *Stewart v. Comm'rs of Wyandatte Co.*, 45 Kas. 708, he has voluntarily invoked for his benefit the order of the board, and is now bound by it, although it is made without authority. His attitude with respect to this strip of ground has been such that he would not be permitted to enjoin the collection of a tax for its improvement, but would be compelled to pay. He could not successfully refuse to perform work on this strip of ground as a public highway, if properly ordered to do so by the road overseer of the district in which it is located and he resides. Can the judgment creditor succeed to his title and repudiate his obligations? The agreed statement of facts recites that ever since the order of the board of county commissioners, 60 feet off of the west side of what was designated as Kansas avenue on the plat of the town-site of Quindaro have been used as a public highway, and have been worked and kept in repair by and under the supervision of the road overseer of the road district in the township of Quindaro within the limits of which this ground is situated, and the township officers of said township have treated the same in all respects as other roads and highways in said township. These results are directly attributable to the action of the county board, put in motion by the direct efforts of Huffaker. He has by such conduct induced action upon the part of others; he has created a condition of affairs with respect to this highway that has induced official and individual action concerning it, and he is in no situation to aver against others that what he helped to make appear had an actual existence, has no legal existence. He is estopped from asserting that this strip of ground is a legal

highway, and anyone who takes from him, or succeeds to his ownership of the land, is estopped to the same extent. (See cases of *Neff v. Bates,* 25 Ohio St. 169; *Turner v. Williams,* 76 Mo. 617, as tending to support this doctrine.)    Again, assuming that the action of the board of county commissioners, declaring the west 60 feet of Kansas avenue a public highway is defective, yet, if the public have acted on the claim supplied by such proceedings, and have used the strip of ground as a public highway for the requisite period of time, it is established as such by presumption. (Elliott, Roads and St. 136, and authorities cited.)

It may be said — and this is one of the embarrassments of the case — that the continued user of this strip of ground is as consistent with its character as a street as that of a public highway.    While this is measurably true, and would be ablutely so in the absence of the proceedings before the county board, it must be recollected that this user was coupled with certain official acts entirely inconsistent with its character as a street.    It was worked and improved by the overseer of the road district, and it was treated by the township officers as a highway.    Its character as a street was formed by the act of dedication, and beyond the filing of the plat there is not an affirmative word in the whole record that it was ever used as a street, but on the contrary there are many things recited that rebut the ordinary presumption that it continued to be a public street.    These are, that there never was a population on the land platted sufficient to make a city, town, or village, but that such land constituted a town-site, as defined in the case of *City of Ottawa v. Rohrbough,* 42 Kas. 253, "it being a tract of land subdivided into lots and blocks by streets and alleys, that has never been improved by occupancy or buildings, or has been so partially improved, but not to the extent as would authorize the organization of a city, town, or village."    It is set forth in the agreed statement of facts "that the lands within the limits of said town-site of Quindaro have ever since said proceedings and orders above set forth been occupied and used as farming lands, and in no respect have been

occupied, used or treated as town lots for any of the purposes of a town or village." So that the strip of ground was not in use as a street at the time the county board declared it to be a public highway.

We are not unmindful of the fact that this court has several times declared that a public highway cannot be created by a resolution of the board of county commissioners, (see cases of *Noffzigger v. McAllister*, 12 Kas. 315; *Comm'rs of Wabaunsee Co. v. Muhlenbacher*, 18 id. 129; *Shafer v. Weech*, 34 id. 595; *Barker v. Comm'rs of Wyandotte Co.*, 45 id. 681,) but the order of the board can be clearly referred to by the public as a claim or color of right for the use, reinforced by the fact that there has been a constant use of the same, as a public highway, for more than 14 years. In this state it was held, in the case of *Oliphant v. Comm'rs of Atchison Co.*, 18 Kas. 386, that "the use of a highway for five years vests no title in the public as against the owner." We have been unable to find a case in which the time necessary to create a highway by prescription has been expressly stated by this court. Of course 15 years' constant use would be sufficient. But this is not a very material question in this case, the precise contention now being that Huffaker's relation to this strip of ground has been such that the use by the public of it, for any length of time, is sufficient to estop him, by reason of his conduct and influence in procuring the order of the board, and, he being estopped, that estoppel operates against all those in privity with him. The old maxim of the common law, "once a highway always a highway," still holds good, so far as the rights of an abutter are concerned, and it is probable that the legislature cannot take away the rights of an abutter without at least providing for compensation; but where no such rights exist or are asserted, the public may abandon or some tribunal vacate. It is shown that this strip of land was created a street by dedication, and then it is shown that the town in which this street was located was disincorporated, or, if not legally disincorporated, that for a long series of years the land on either side of the street has been used exclusively

for farming purposes, and not used for any of the purposes of a city, town, or village; it is shown that it has been used as a public highway for many years, and that this user is traceable to a color of right found in the public records of the county, and acquiesced in for many years, both by the officials of the township, the adjoining owners, and the traveling public·

It seems clear to us that if the public authorities treat this strip of ground as a public road, and citizens have acquired rights on the faith that it was a road, and public money is expended on its improvement, and resident tax-payers of the road district in which it is situated are compelled to perform labor upon it, and all these things have been induced by the acts and declarations of the owner, that such owner creates an equitable estoppel, which precludes him from defeating the public right of passage, not because it has become a public road by prescription, but because the declarations and actions of the owner of the land have been such that he, in good conscience, cannot deny that it is a public road. An owner in many cases may estop himself from recovering the land itself, and yet have his action for damages. (Elliott, Roads and St., p. 3, and authorites cited in foot-notes.) And if Huffaker is estopped, those who succeed him in ownership of the land must keep silent. The plaintiff in error is either bound by the acts and declarations of Huffaker, or his levy on the land is not such an interest as permits him to disturb a condition created and acquiesced in by the public and the owner.

These considerations lead us to the conclusion that the judgment of the court below ought to be affirmed, and we so recommend.

By the Court: It is so ordered.

All the Justices concurring.