ELIZA McDOUGALL ET AL., APPELLANTS, VS. LOUISA MEGINNISS ET AL., APPELLEES.

1. "Exemption laws are to be liberally construed in favor of their beneficent purposes."

2. The Constitution of this State, Section 1, Article 9, exempts a homestead to the extent of one hundred and sixty acres of land outside an incorporated city or town to the head of a family residing in this State, with the improvements on the real estate, without regard to the use that may be made of that portion of the tract not covered by the residence and enclosures.

Appeal from the Circuit Court for Leon county.

Judge Vann, of the Third Circuit, sat in the place of Justice Raney, who was disqualified.

The facts of the case are stated in the opinion.

*R. W. Williams* for Appellant.

*D. W. Gwynn* for Appellees.

The Constitution of Florida provides that "a homestead" to the extent of 160 acres of land, owned by a head of a family, and the improvements on the real estate, shall be exempted from forced sale under any process of law. Constitution of Florida, Article 9.

The homestead cannot in any event exceed 160 acres; it may be limited to a much less quantity.

1st. He may not own 160 acres, and then his homestead could not cover that amount.

2d. He may own 160 acres and a much larger body, and if he does not live on and use it as a homestead, he cannot claim any part of it as exempt from payment of debts.

See 19 Florida Reports, 195, where the court says: "The almost uniform current of decisions is that actual occupation of property as a home of the family, is necessary to impress upon it the character of a homestead." See also 18 Florida Reports, 834.

3d. He may own a compact body of 160 acres or more, and only use ten acres as a homestead, turning out and abandoning the balance. He will be confined in his homestead exemption to the ten acres which he had in use. Hancock vs. Morgan, 17 Texas, 583; 19 Fla., 195.

The homestead, after it has been acquired and enjoined, may be forfeited and lost by abandonment, and if the entire homestead may be thus lost, cannot a part be lost in like manner. See Fyffe vs. Beers, 18 Iowa, 7.

The land in controversy has never been occupied since the adoption of the homestead law in 1868, but was abandoned by Brokaw in the year 1867.

It is not the quantity of land which a man owns that constitutes and makes his homestead, but the use he makes of it.

The Convention in framing the Constitution evidently intended to use the term " homestead " in its usual acceptation, and Webster, in his Unabridged Dictionary, defines it as " the place of a mansion house, the inclosure or ground immediately connected with the mansion." And in 7 New Hampshire Reports, the court says: " Homestead means nothing but *home place*." The residence or dwelling place of the family. See 7 New Hampshire Reports, 241; 51 New Hampshire, 639.

In the language of the Constitution of Florida, " a homestead to the extent of 160 acres of land, owned by the head of a family, and the improvements on the real estate, shall be exempted from forced sale under any process of law." That is to say that the homestead shall in no event exceed 160 acres; it may be less, but cannot be more. It does not necessarily include all adjoining lands. See 36 New Hampshire, 166, and 36 Iowa Reports, 394.

The lands in controversy were abandoned and turned out by P. B. Brokaw as a common in the fall of 1867, and have not been cultivated or used by him or his family since that time, a period of 17 years.

Homestead by no means implies or includes in its meaning all the lands which the party might own adjacent to his domicile. It means nothing more than the home place, and the lands used for the purposes thereof. Hancock vs. Morgan, 17 Texas Reports, 583. And the same idea is differently expressed in an Illinois Report, where the court says: " It is doubtless a question of fact, whether particular,

adjoining and contiguous tracts forming one compact body, is, or not, parcel of the homestead." 18 Illinois Reports, 198.

In the language of the second instruction given to the jury in the court below, and to which the plaintiff excepted, " the homestead represents the dwelling house at which the family resides with the usual and customary appurtenances, including out-buildings of every kind necessary or convenient for family use, and lands used for the purposes thereof." This instruction seems to come up to the full measure of a homestead. See 18 Florida Reports, 834; 33 California Reports, 227. And to this point I will also cite the very able opinion of Justice Bradley, in the case of Greeley, Assignee, vs. Scott and wife, 2 Wood U. S. Circuit Court Reports, 658.

Now, as there is no evidence before the court that P. B. Brokaw was a planter or farmer, but that he had abandoned that occupation and only had three or four acres of land enclosed with his house, which was all the land he needed in his usual pursuits in life, and that neither he nor his family have ever made any use of the lands in controversy for 17 years, it is evident that this property is no part of his homestead, but is subject to that provision in his will by which his executrix is authorized to sell the land in payment of his debts.

In some States the exemption does not exceed a certain quantity of land, while in others the exemption is limited to a certain value. But in neither case is quantity or value the primary object. They came into the account merely as restrictions or limitations. Gregg vs. Bostwick, 33 California R., 226.

In Florida, as in California, the word " homestead " is used in its ordinary and popular sense, which is also its legal sense. In one it is limited by quantity, as in Florida it

cannot exceed 160 acres. In California it may be more, but is limited in value to $5,000.00. In Florida the exemption does not consist of 160 acres, either in one continuous body nor in separate tracts, but of a certain tract not more than 160 acres, which possesses the characteristics of a "homestead," but neither in California or Florida can lands of a certain quantity or value be exempt from forced sale until they are converted into the real "homestead" of the party, as defined above, in 33 California, 227, and which definition is approvingly quoted. in 18 Florida R., 834, and in 21 Wallace R., 486. Chief Justice Waite says: It must appear that the lands were actually used or intended to be used as a part of the home of the family. This case came up on an appeal from the Circuit Court of Texas, where the homestead exemption is very similar to that in Florida.

We have seen from the evidence that this large tract of land adjoining the city of Tallahassee, on the west from the gas house lot, on Two Hundred Foot street to Virginia street, a distance of four hundred yards, passing by four different streets of the city, has all, except a few acres adjacent to and surrounding the family mansion, been thrown out and permitted to remain idle, unfenced and uncultivated for a period of seventeen years, and of no value to the Brokaw family, except as an investment which may become immensely valuable from its proximity to the city of Tallahassee, for building lots and residences. Now, the question arises, does the homestead law contemplate the enriching of a debtor's family at the expense of his creditors?

THE CHIEF-JUSTICE delivered the opinion of the court:

Perez B. Brokaw owned in his lifetime and at the time of his death a tract of one hundred and sixty acres of land

in the county of Leon, to wit: the NW¼ of sec. 31, T. 1, N., R. 1, E.   He was residing on said tract of land, with his family, at the time of his death and for ten years previous thereto.   In the year 1866 Brokaw cultivated the land, since which time, with the exception of a few acres immediately around the house which was used as a residence, the land was uncultivated and not used by said Brokaw, or his family since his death.   It was a common pasture ground for the cattle of the vicinity.   Brokaw left a will of which his wife was the executrix, and under a power granted to her in the will she sold to Louisa Meginniss fifteen acres of the tract of land above described.

Brokaw at the time of his death left surviving him three minor children, the issue of a former marriage, Abram, Phœbe and Eliza.   Abram died without issue and intestate.   Phœbe was married to Alexander McDougall. She died in the year 1883, leaving three children, to wit: Eliza B., Mary and John McDougall.   This suit is brought by Eliza Brokaw, Alexander McDougall and Eliza B. McDougall, Mary McDougall and John McDougall by Alexander McDougall, their next friend, against Louisa Meginniss and Geo. H. Meginniss, her husband, for the recovery of the fifteen acres of land sold by Mrs. Brokaw, as executrix as aforesaid, to said Louisa Meginniss.

On the trial in the Circuit Court the jury found a verdict for the defendants.   The appellants, who were plaintiffs below, moved for a new trial, which motion was refused by the court.   The appellants excepted to this ruling and prosecute their appeal to this court.   The main question in the case is whether or not, a person who is the owner of an one hundred and sixty acre tract of land outside of an incorporated city or town, a resident of the State, the head of a family, residing with his family on said land and using the residence thereon as a homestead, can legally claim as a

part of his homestead that portion of the one hundred and sixty acres of land which is not enclosed by fences and not used by the owner for any purpose.

The court, on the trial of this cause, charged the jury that the "homestead represents the dwelling-house at which the family resides, with the usual and customary appurtenances, including out-buildings of every kind necessary or convenient for family use *and lands used for the purposes thereof.*"

The language of the Constitution is: "A homestead to the extent of one hundred and sixty acres of land * * * * shall be exempted from forced sale * * *." It is urged by the counsel for the appellees that inasmuch as the proof showed that only a small part of the one hundred and sixty acre tract was enclosed and cultivated that the remaining portion, which was waste land, could not be claimed as a part of the homestead. The counsel has cited several cases in support of his position which we will examine.

The evidence in the case showed that the residence of Brokaw was on the tract of land described above and that the fifteen acres sold to Mrs. Meginniss by the executrix of Brokaw was a part of said tract which was not enclosed and on which there were no improvements.

The first case cited by the appellee is the case of Drucker vs. Rosenstein, 19 Fla., 191. In this case the facts were that the piece of ground had no improvements of any kind whatever upon it, that the defendant in execution had purchased it with the intention of building a house on it for a homestead and had contracted with a builder to construct a house thereon for himself and family; he had never occupied it as a homestead and the court decided that the property was not exempt from levy and sale. It has no application to the case under consideration. The next case cited by appellees is Oliver vs. Snowden, 18 Fla., 823. The facts

in this case were, that the defendant in execution resided
with his family in the town of Gainesville, and that neither
he nor his family resided on the lands lying several miles
outside of the town, which he claimed as exempt under the
homestead act.    The court decided that land could not be
claimed as exempt from the debts of the owner unless act-
ually occupied as a residence of the owner.    It has no bear-
ing here.    The case of Fyffee vs. Beers, 18 Iowa, 7, also cited
by appellees, decides that abandonment and actual removal
from the homestead with no intention of returning will for-
feit the right as against purchasers.    It is argued that if an
abandonment of the whole of the property forfeits the
right of homestead, that an abandonment of a part would
operate as a forfeiture of the right to the part so abandoned.
When a party resides on the land as a homestead and the
law is silent as to how much of said land, other than that
occupied by his house, he shall use or cultivate, or in what
manner he shall use it, or that he shall use or cultivate it
all, we do not feel at liberty to amend the Constitution of
the State by the interpolation of further provisions therein
regulating the manner or extent of the use of the homestead,
or declaring that a non-user of a part while he remains on
the land is an abandonment of that part which takes from
it the benefit of homestead exemption.    In our view the
owner is only required by the Constitution to live on the
land and the whole one hundred and sixty acres is exempt.

Appellees cite also the case of Haitt vs. Webb & Wife, 36
New Hampshire, 158.    There is a difference in our law
which states the quantity of the land which can be claimed
as a homestead outside of an incorporated city or town, to
wit, one hundred and sixty acres, and the New Hampshire
statute which provides for the exemption of the family
homestead, provided such homestead does not exceed in

24

value five hundred dollars. The right to the lot and the homestead thereon was not denied, but the party claimed also another lot which had never been occupied as a homestead and was rented to tenants. The value of the homestead lot and the lot claimed aggregated $725. The court that the exemption did not extend to property let to tenants. There was no provision as to quantity as in our law and the property was not a part of the homestead. The case cited in 36 Iowa, Reynolds vs. Hull, *et al.*, 394, quotes the statute of the State on which the decision is based. It provides that a tract not contiguous to the house must be " habitually and in good faith used as a part of the homestead." There is no such provision in our Constitution. The case cited in 18 Ill., 194, was on the state of facts as stated by the court, " whether a tract of timber land a mile from the farm land and not adjoining it, yet from which supplies of fire wood, rails, &c., were alone derived for the use of the farm can be treated as a part of the homestead under the act of 1851." The court said " the language of the act seems to contemplate but one piece of land." The court also said : " But I conceive the intention of the Legislature in confining the exemption to the ' lot of ground,' containing the dwellings and residence, designedly narrowed the protection to less than would be included in the more comprehensive terms of the homestead."

In the case cited in 21 Wallace, Gressholz vs. Newman, 481, the facts were that the heirs of Mrs. Kirchberg claimed as part of her homestead after her death a lot sold by her husband in which sale she never joined and which was without her consent. The lot had never been used as a homestead and was on a separate tract from the one on which the Kirchbergs lived. After selling the lot Kirchberg built a kitchen on it. It will be seen from this statement that it has no relevancy here.

The next case cited by the counsel for the appellees is the case of J. C. Greeley, assignee of Joseph W. Scott, vs. Joseph W. Scott and wife *et al.*, 2 Woods, C. C. Reports, 657.   This case is directly in point, being a decision on our own law by Justice Bradley of the Supreme Court of the United States, holding a term in the 5th Circuit, and supports the proposition of counsel for appellee.   Judge Bradley says: " The reservation, however, is only that of a homestead and embraces no more, although the party may own more within the prescribed limit of quantity.   It is material therefore to know what is meant by and embraced in a homestead within the meaning of the Constitution of Florida ; however it may be elsewhere, it certainly embraces more than a house for a shelter, for it may extend to 160 acres of land, which would never be needed for that purpose alone.   As 160 acres of land is the usual quantity for a farm in this country the policy of the Constitution seems to be to allow a man such quantity of land with his house as he is accustomed to use therewith in the pursuit of his occupation.   In other words the object seems to be not only to preserve to the unfortunate debtor his house for shelter, but his usual means of employment by which to earn his livelihood and support his family." Again, "for the same reason, the farmer's homestead would not include a saw-mill or a grist-mill or a carding and fulling mill, though erected on a portion of the tract of which the farm is a part."

. Again: " Homestead would not embrace tenant houses, though built on the farm, for these would not be a proper part of the farm homestead."   Our Constitution says : " A homestead to the extent of 160 acres of land    *    *    * owned by the head of a family residing in this State    *    * and the improvements on the real estate," shall be exempt from levy and sale.   This language in our view is too plain

for elaboration or argument. We have no authority, if the person who claims the land for a homestead resides thereon, is a resident of the State, the head of a family, and there is no more than 160 acres in the tract, to add any other conditions than those expressed in the Constitution. To say say how the homsteader should use his land, whether as a "tarm," or for a "saw-mill," or a "grist-mill," or a "carding and fulling mill," would be to impose a judicial condition not found in the Constitution of the State. The Constitution does not prescribe the manner in which the tract shall be *used* beyond residing thereon.

In the case of Grigg vs. Bostwick, 33 California, 220, the complainants filed a bill in equity to restrain a judgment creditor from selling under execution certain land claimed as a homestead. The California act, unlike our Constitution, does not prescribe the quantity of land exempted, but limits it as to value, to wit: $5,000.00. Chief-Justice Randall in delivering the opinion of the court in Oliver vs. Snowden, 18 Fla., 823, commenting on this California statute, says: "This extract shows the difference between the statutory regulations as to the extent of the homestead in that State and in Florida. In this State the extent of the homestead is measured by quantity and not value."

In the case of Hancock vs. Morgan, 17 Texas, 582, cited by the appellee's counsel, the facts were, that Hancock obtained a judgment against Morgan and his wife, and levied an execution on a house and lot in the city of Austin, which was occupied by one Grey, under a lease from Morgan. It was proved that Morgan, shortly after his marriage, purchased the house and lot and moved into the house; that he lived there until he built a new house on the same lot, and then moved into the new house. The whole lot was enclosed; that after moving into the new

house, he rented the old house to Grey and ran a fence across the lot separating the old house from the new. The value of the lot and both the buildings did not exceed two thousand dollars. The Texas statute exempted "any town or city lot or lots, in value not to exceed two thousand dollars." The court held that this lot and house rented to the tenant Grey, was a part of the homestead exemption, and could not be sold under execution. The court said: " When a homestead is situated upon a single town or city lot, and the said lot with all the improvements thereon does not exceed in value the sum of two thousand dallars, the whole is exempt from levy and sale, *without regard to the uses to which part of the lot may be applied.*"

We think this is a correct exposition of the law, when the law itself is silent as to how the property should be used. In the case of Carter's Administrators vs. Carter *et al.*, 20 Fla., 562, Chief Justice Randall said: " Exemption laws are to be liberally construed in favor of their beneficent purposes."

We think the court erred in charging the jury that " the homestead represented the dwelling house at which the family resides with the usual and customary appurtenances including out-buildings of every kind necessary or convenient for the family use *and lands used for the purposes thereof,*" in limiting the quantity of land designated in the Constitution to such as was *used.*

It follows that the sale by the executrix of Brokaw of a part of the homestead tract to Louisa Meginniss, was invalid and inoperative as against the heirs of Brokaw or claimants under them.

The judgment is reversed and a new trial granted.