ARMOUR & COMPANY, A CORPORATION, AND SMITH, RICHARDSON & CONROY, A CORPORATION, *Appellants,* v. GEORGE W. HULVEY AND W. H. DOWLING, AS SHERIFF OF DUVAL COUNTY, *Appellees.*

Opinion Filed February 8, 1917.

Section 1 of Article X of the Constitution of Florida, 1885, which provides for exemption from forced sale under process, of any court, a homestead to the extent of one hundred and sixty acres of land owned by the head of a family residing in this State, does not limit such exemption to the dwelling house of the owner and the subsidiary buildings located on the land, but extends to the entire one hundred and sixty acres, and the improvements on the real estate when the land is actually occupied and lived on by the owner and head of the family and his family.

Appeal from Circuit Court for Duval County, Daniel A. Simmons, Judge.

Order affirmed.

*Milam & Milam,* for Appellants;

*W. M. Toomer* and *W. H. Surrency,* for Appellees.

ELLIS, J.—The appellants had recovered judgments at law against George W. Hulvey, upon which executions had issued and were levied by the Sheriff of Duval County, W. H. Dowling, upon certain lands in that county comprising about six acres and known as "Murray Hill Park."

After the levy of the executions and advertisement of the property for sale thereunder, George W. Hulvey by proper proceedings designated the property as his homestead and claimed the same as exempt from forced sale. The sheriff thereupon refused to sell the lands under the aforementioned executions.

The appellants filed their bill against the sheriff and Hulvey to subject the property to the satisfaction of the said judgments.

The cause was heard upon bill, answers of the two defendants, and a stipulation as to the facts. The Chancellor decreed the equities to be with the defendants and dismissed the bill, from which decree this appeal was taken.

The property involved in this litigation comprises about six acres of land, and is not situated within the corporate limits of any town or city in this State. Located upon the property are several buildings and an open air gymnasium. The defendant George W. Hulvey conducts upon the property a preparatory school known as the "Florida Military Academy," at which "rooming and dining" accommodations are provided for the students and cadets. Mr. Hulvey holds the property under a deed from the Jacksonville Development Company, a corporation, dated June 1, 1913, which contains the following provisions:

"(1) 'The grantor does give, grant, bargain, sell, alien, remise, release, enfeoff, convey and confirm unto

said grantee and his heirs and assigns, in fee simple the lands situate in Duval County, State of Florida, described as follows:

"'That certain irregular tract, parcel or piece of land called "Murray Hill Park" on the map of Murray Hill Heights, as recorded in Plat Book 2, page 87, of the current public records of Duval County, Florida, and bounded Easterly by Park Terrace and Madison Avenue; Westerly by Edgwood Avenue and Seventeenth Street; Northerly by unplatted and irregular tract of land, numbered on said plat as 76 in large numerals, and containing six acres more or less, "for school, college or educational purposes."'

"(2) 'To have and to hold the same together with the tenements and hereditaments unto the said grantee and his heirs and assigns in fee simple but subject to the following limitations: "And it is expressly covenanted on the part of the said grantee for himself and his heirs and assigns, that in the event the said described land and building erected thereon shall within ten years hereafter cease to be used for school, college or educational purposes, then this deed shall be null and void and all right, title, equity, interest, claim and estate whatever of said grantee, his heirs and assigns, shall be forfeited, and said grantor, its sucessors and assigns shall own said land, hereditaments and appurtenances in all respect as if this deed had not been executed."'"

By the stipulation the parties agreed that the complainants had obtained the judgments at law against Hulvey, that writs of execution had issued thereon and were levied upon the lands described above, and that Hulvey had designated the land as his homestead and claimed the same to be exempt from forced sale, and that several buildings are located on the property, the main building

being about 200 feet in length, 50 feet in width, three stories in height, and has a wing 30 feet by 40 feet two stories in height; on the first floor are kitchen, dining room, superintendent's apartments, offices, sitting room, library, reading room and bed rooms for sixteen or more cadets; the second floor contains study hall, seven class rooms and lobby and lounging hall, and on the third floor are located rooms for sixty or more cadets, baths, wash rooms, commandant's quarters and club rooms. The stipulation also contained the following agreement as to the facts:

"That ever since the defendant, George W. Hulvey, became the owner of the premises described in the complainant's bill of complaint, and the same were made suitable and fit for habitation through the erection of the necessary buildings thereon, the defendant and his family have lived upon and continuously occupied the same as their bona fide home, residence and permanent place of abode; that the defendant's family actually occupy for living quarters and for uses directly connected with the family, as such, a portion of the first floor of the main building in extent slightly more that one-sixth of the space comprised by that floor, consisting of bedrooms and dining room grouped at one end of said building, and one room used as a library and living room at the opposite end of said building on the same floor, the library being also the one used by the students in connection with the Academy, together with a room located about midways said buildings on the third floor thereof used as a guest's chamber. That said premises are so occupied and used by the said defendant and his family both when the Florida Military Academy is in session and during vacation thereof, the annual session of said school lasting for a period of approximately eight and one-half months dur-

ing each school year. That said defendant's family consists of himself and his wife, Anna Hulvey, who have been for some time past, and are now engaged in conducting upon said premises a private school for boys and young men known as the Florida Military Academy; that in conducting the said school the services of from seven to nine teachers and assistant teachers are required including the services of a retired United States army officer detailed to said school for military instructions. That by means of the operation and conduct of said school, the defendant's family earn their livelihood, and that the defendant has no employment, profession or occupation other than that afforded by the operation of said school. That the premises in question are heavily mortgaged; and that the school conducted thereon is hardly more than self sustaining at the present time. That in claiming said property to be his homestead the defendant did so in good faith with no intention of ultimately defeating the claims of the complainants in this suit, or any other of his creditors; that the defendant admits the justness of the judgment demands of said complainants and professes his willingness to meet the same as soon as his circumstances will permit."

The Section of the Constitution under which the appellee claims his right to designate the described property as his homestead to which attaches the exemption from forced sale under process of any court is Section one of Article X, and is in the following words: "A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process

of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this article."

The judgments obtained by the appellants were not based on any obligations contracted for the purchase of the property, nor for the erection or repair of improvements on the land, nor for house, field or other labor performed on the same. It is not denied that the appellee George W. Hulvey is the head of a family who with him reside and have their habitation and abode upon the lands described.

Appellants' counsel contend that the word "homestead" is the dominating word in the section of the constitution quoted above, and that the facts in. any case where the benefits of the homestead and exemptions clause of the constitution are claimed, should be studied in the light of the generally accepted definition of the word. They quote from Funk & Wagnall's New Standard Dictionary which defines the word "homestead" as "The place of a home; the house, subsidiary buildings and adjacent land occupied as a home," and conclude that the words "Subsidiary Buildings" implies "that the house the shelter, is the primary feature of the homestead," and the phrase, "occupied as a home" means that

a *commercial* enterprise of such an extent that it overshadows the home is not contemplated in the word. Building upon the Standard Dictionary definition of the word "homestead" counsel suggest a rule by which doubtful cases of this kind may be measured. "The property" they say "must be used primarily as a home and any other uses must be incidental and auxiliary to this chief and primary purpose. Should its chief use be for a purpose other than as a home, immediately it loses its character as such and the exemption does not attach."

In the definition of the word "homestead" as given in the dictionary mentioned, the words "subsidiary buildings" are used, and the rule resting upon this definition is narrowed to and confined within the limits of counsel's interpretation of those words. Whereas the constitution seemingly does not limit the improvements upon the land to a "house and subsidiary buildings;" on the other hand, it definitely prescribes the number of acres which may be held as a homestead and in words simple yet comprehensive and seemingly definite in meaning, provides that "the improvements on the real estate" shall be included in the exempt property. As if the framers of the constitution themselves had interpreted the words "and the improvements on the real estate" to mean any valuable addition or betterment of whatever character, they in the same section, provided that the exemption when claimed in a city or town should not extend to more improvements or buildings than the residence and business house of the owner.

We think that the words "and the improvements on the real estate" have a broader meaning than the idea conveyed by the words "buildings subsidiary to a residence or dwelling." The exemption of a half acre within the limits of any incorporated city or town, would doubtless include such outhouses, barns, wagon houses, garages,

wood or coal sheds, chicken houses and fences, etc., as were appurtenant and subsidiary to and used in connection with the residence as conveniences and auxiliaries, although they are not expressly mentioned as being included in such exemption. If such subsidiary buildings and improvements are included in an exemption of city property, the framers of the constitution must have thought that the words "and the improvements on the real estate" as applied to the exemption not within a city, meant more than a residence, subsidiary buildings and business house.

The Constitution of 1868, providing for a homestead and exemptions in so far as its extent is concerned, is almost identical with the provision of the Constitution of 1885. In the case of Greeley v. Scott, 2 Wood's Rep. (U. S.) 657, Mr. Justice BRADLEY of the Supreme Court of the United States, in commenting upon the homestead exemption provision of the Constitution of Florida of 1868, said: "That the preservation of a householder's means of carrying on his business, as well as a house for shelter, is within the constitutional purpose, is evident from the clause relating to city property, namely, that in a city or town the exemption shall not extend to more improvements or buildings than the residence and business house of the owner, showing that the business house as well as residence is included;" again, "Whether the provision is politic or impolitic is a question with which the courts are not concerned. In the eye of the philosophic economist, taking a broad view of the interests and objects of human society, it has many reasons in its favor; and the creditor cannot complain of injustice, for he understands the conditions when he gives 'credit. It is a pure question of policy, namely, whether the advantages obtained by the exemption are equivalent to the disadvan-

tages arising from the unwillingness of capital to remain in a community where such an exemption exists; or whether from the latter cause, the law will not operate too depressingly upon enterprise, speculation, however, is unnecessary. The people of Florida have in their constitution declared what their will is on the subject, and that declaration is binding on both the people and the courts." In that case the person seeking to exempt his homestead was engaged in the business and trade of sawing lumber, and asked to have his mill, which adjoined his dwelling, reserved as a part of his homestead. Judge Bradley held that the mill, in the sense of the constitution, is appurtenant to and a part of the debtor's homestead. In other words, the property considered as the homestead of a lumberman running a saw mill was exempt under the provisions of the constitution. In the case of McDougall v. Meginniss, 21 Fla. 362, this court said: "In our view the owner is only required by the constitution to live on the land and the whole one hundred and sixty acres is exempt." In the Greeley-Scott case, Mr. Justice Bradley undertook to draw a distinction between the buildings and improvements erected by the owner of a homestead in the course of his business by which he earned a living, and those improvements representing an investment of his surplus earnings or capital, and held that the latter would not be included in the exemption. Mr. Chief Justice Mc-Whorter, in the case of McDougall v. Meginniss *supra*, did not approve of this view, however, and after referring to the language expressing such idea, said: "We have no authority, if the person who claims the land for a homestead resides thereon, is a resident of the State, the head of a family, and there is no more than 160 acres in the tract, to add any other conditions than those expressed in the constitution. To say how the homesteader

should use his land, whether as a 'farm' or for a 'saw mill' or a 'grist mill' or a 'carding and fulling mill,' would be to impose a judicial condition not found in the constitution of the State. The constitution does not prescribe the manner in which the tract shall be used beyond residing thereon." This language is clear, and it is significant that the framers of the constitution of 1885, when they came to write the homestead and exemption clause for that constitution used the language of the constitution of 1868, on the subject of the homestead's extent, which had been construed by a judge of the Supreme Court of the United States to mean that all improvements made by the homesteader in the course of his business or occupation were exempt; and by the Supreme Court of Florida which had held that nothing more was required than for the homesteader to live on the tract to render the whole 160 acres exempt, and the constitution did not prescribe the manner in which the land should be used beyond residing on it.

As to the policy of a constitutional clause securing such a liberal exemption, the courts are not concerned. It is evident, however, from the language used in the constitution of 1868, and its repetition in the constitution of 1885, after the decision of this court in the McDougall and Meginniss case, *supra,* that the framers of the constitution concluded that the advantages to the State to be derived from a liberal policy of homestead exemptions was greater than the benefits which might accrue from laws permitting a creditor to pursue his debtor to the very threshold of his home.

In this case the person claiming the homestead carries on the business of conducting a military school. The nature of the business requires the construction of buildings to accommodate the students in the matter of lodg-

ing and board; there must be bed rooms and halls, class rooms and libraries, club rooms and offices, quarters for the officers or teachers, and apartments for the principal and his family. If the owner had erected for himself and family a residence apart from the main building, under Judge Bradley's view of the constitution as expressed in the Greeley-Scott case, *supra,* all these improvements would have been exempt as preserving the householder's means of carrying on his business as well as a house for shelter. There can be no doubt that they would be exempt under the view expressed by this court .in the McDougall-Meginniss case.

The homesteader is not required to live in a house of any particular design nor style, nor is he required in cases of exempt property outside the limits of an incorporated city or town to have his residence separate and apart from his business house. He may if he desires erect a dormitory for boys and dwell with them in the "midst of alarms," or may retreat to some quiet corner and dwell with his family in peace, the improvements on his 160 acre tract are exempt from forced sale under process of any court certainly to the extent that such improvements are useful or necessary to his business or occupation by which he earns a living for himself and family.

We think that the deed under which Mr. Hulvey holds the land conveys such an estate in the land as to support the privilege of a homestead exemption.

The order of the Chancellor dismissing the bill is affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur.