AMMA H. SHONE, ALICE D. WETHERELL, J. W. CAREY, MRS. JOSEPH H. DAY, MRS. W. R. ANNO, MRS. FORREST LAKE AND HUSBAND FORREST LAKE, MRS. JULIEN CARPENTER AND HUSBAND JULIEN CARPENTER, THOMAS M. CULBERTSON AND VERNON PRICE-WILLIAMS, *Appellants*, v. THERESA BELLMORE AND SAMUEL RHODES, A MINOR, BY THERESA BELLMORE, HIS MOTHER AND NEXT FRIEND, *Appellees*.

## Opinion filed April 8, 1918.

1. A demurrer addressed to the entire bill of complaint will be overruled if the bill contains any equitable ground or basis for the relief sought.

2. A demurrer to a bill in equity operates as an admission that all such matters of fact as are well and sufficiently pleaded in the bill are true, but allegations of law are not admitted by the demurrer.

3. A head of a family who is the owner of a homestead cannot by his will bar the interest of his wife and children in the homestead.

4. A posthumous child of a man who is the owner of a homestead in this State is included among the heirs to whom the exemptions provided by Article X of the Constitution inure.

5. An allegation in a bill of complaint that the deceased was at the time of his death the owner of certain lands lying in a body, which with his wife he occupied as their homestead is sufficiently certain to present an issue as to whether the land occupied by the deceased at the time of his death was his homestead.

6. The mere platting of land, not within the limits of an incorporated city or town, and sale of lots according to such plat, which land is owned by the head of a family and occu-

pied by them as their homestead does not destroy its character as a homestead nor conclusively show an abandonment of the homestead by the owner.

Appeal from Circuit Court for Dade County, H. Pierre Branning, Judge.

Orders affirmed.

*Atkinson & Burdine,* for Appellants;

*Carson & Pine* and *R. B. Gautier,* for Appellees.

ELLIS, J.—Theresa Bellmore in her own right and as next friend of her minor son Samuel Rhodes brought a suit in chancery in the Circuit Court for Dade County against the appellants and others.

The purpose of the bill was to obtain a decree declaring the will of Samuel Rhodes deceased, the former husband of Theresa Bellmore and the father of Samuel Rhodes, minor, to be void as an attempt to devise a homestead; to set aside the homestead to the use of the widow and child; and to declare certain deeds which purport to convey part of the lands covered by the homestead to be null and void.

The appeal is taken by some of the defendants named in the amended bill of complaint and by some who are named as defendants in the original bill but not named as defendants in the amended bill, from an order overruling their demurrers to the amended bill.

A great many points of law were presented by the demurrers, one of which contained twenty-five, and another forty-five grounds. These demurrers however were all general demurrers in that they were addressed to the bill as a whole, although there are some grounds

which might have been specially directed to certain por-
tions of the bill as amended.

Following the settled rule in this jurisdiction there-
fore we will confine our investigation to the inquiry
whether there is equity in the amended bill of complaint,
and if the bill appears to rest upon any equitable ground
we shall affirm the chancellor's order.   Of course if there
is no equity in the bill the order should be reversed and
the bill dismissed or leave be given to amend.   See
Prince v. Mahin, 73 Fla. 525, 74 South. Rep. 696; Mitchell
v. Mason, 65 Fla. 208, 61 South. Rep. 579; Carlton v.
Hilliard, 64 Fla. 228, 60 South. Rep. 220.

A demurrer to the whole bill in equity operats as an
admission that all such matters of fact as are well and
sufficiently pleaded in the bill are true, allegations of
law are not admitted by the demurrer.'  Capital City
Bank v. Hilson, 64 Fla. 206, 60 South. Rep. 189.

It appears from the allegations of the bill that Samuel
Rhodes was the owner of a tract of land, not within the
limits of any incorporated city or town; that on Novem-
ber 11, 1898, two days before he was married he caused
the land to be platted.   On November 15, 1898, two days
after his marriage he caused this plat to be filed in the
office of the Clerk of the Circuit Court for Dade County.
This plat was duly recorded and shows that the lands
were divided into blocks and lots varying in dimensions
and into streets and "avenues;" that on the 13th day of
November, 1898, he and the complainant Theresa Bell-
more were married and they lived upon the land as their
homestead until May 4, 1900, when Samuel Rhodes died.
He left a will in which he devised to his sister certain
lots of land in Section 14, T. 54 S. R. 41 E. in payment
of a debt he owed her, and empowered his executors to
execute a deed to her therefor; to his wife Theresa he

devised all the remainder of his real and personal property to be held for her in trust by Mrs. Ellen Fox and George L. McDonald with power to "sell and convey for the best prices and in such parcels as they may deem to the interest" of his estate and for his wife. Then follows a description of the land. The will provided that the trustees should continue until his wife should attain the age of twenty-five years when they should render a full account of their acts and doings, and execute to her a deed for all the real estate which may then be held by them under the will. The same persons were appointed executors. By a codicil dated about a month later he appointed John A. McDonald as one of his executors, to have the "same power and authority already given to the other two."

It appears from the amended bill of complaint that the will was duly admitted to probate and that five months after his death his wife gave birth to a son, who is one of the complainants to the bill by his mother as next friend.

Paragraph one of the bill describes certain blocks and lots according to the above mentioned plat as having been occupied by Samuel Rhodes at the time of his death as his homestead, that said blocks and lots were "contiguous, lying in a body and each piece thereof adjacent to some other part or parcel thereof." The plat is attached to the bill as an exhibit and is made a part thereof. This plat shows that many of the lots and blocks are separated by streets, but wherever that is the case it appears that the deceased owned the lots or blocks on each side of the street.

After the death of Rhodes his widow executed a deed of conveyance to Varnon Price-Williams to many of the lots. It appears that other lots "had been conveyed,"

presumably before Rhodes' death, to Mary E. Peacock
and J. S. Pent, and that certain other lots had at the
time of Rhodes death certain mortgages unpaid and out-
standing against them. These mortgages were after-
wards foreclosed and certain other lots were sold under
executions issued upon deficiency decrees against George
L. McDonald as Trustee, and George L. and John A.
McDonald as executors of the will. That the platted
lands described as blocks and lots comprised 160 acres,
and were "held and occupied" by Rhodes as his home-
stead at the time of his death. That some of the defend-
ants named in the bill claimed title to certain lots
under the sheriff's deeds made under the deficiency
decrees, others claimed title under deeds executed by
George L. McDonald as trustee, one other, Vernon
Price-Williams, under a deed from the complainant
Theresa, and other defendants who are named as defend-
ants in their official capacity as county commisisoners
claim title to certain of the lands under tax deeds. It
appears from the bill as amended that the complainant
Theresa after the death of her husband remained "at
the home of the deceased" for about eight months after
which she moved with her infant son to the city of
Miami. Afterwards she moved to Atlanta, Georgia, and
other places out of the State from time to time, until
September, 1906, when she married her present husband
J. A. Bellmore, and in 1914, they moved to Dade county
which is her present place of residence.

The prayer of the amended bill of complaint is as
follows: "that a homestead may be declared and defined
for the use and benefit of complainants, consisting of
one hundred sixty acres of lands hereinbefore described,
of which said Samuel Rhodes, deceased, died seized and
possessed of, and which he occupied as his homestead

at the time of his death; that after the said homestead shall be declared and defined by the court, any and all of the conveyances to any of said lands made by any person or persons without authority as herein alleged shall be cancelled of record and shall be declared null and void as against complainants; and that the Will of Samuel Rhodes, deceased, as herein described shall be declared null and void as to the lands so declared to be the homestead of said Samuel Rhodes, deceased; and that your orators, the complainants herein, be declared the owners of said lands set apart as a homestead; that all of the defendants, and each of them, having or claiming to have any interest in said lands be ordered by this court, to convey all their right, title and interest therein to the said complainants; and that the title of the complainants to the lands so declared to be the homestead of the said Samuel Rhodes, deceased, be quieted as against the said defendants, and each of them; and that any and all deeds through which the said defendants or any of them claims title to said land or any part or parcel thereof be declared clouds against the title of complainants and be cancelled of record by the decree of this court; and for such other and further relief as equity may require and to your Honor shall seem meet."

If the will of Samuel Rhodes, deceased, is void for any reason and the complainants are not estopped from asking for the relief sought by reason of anything alleged in the bill, it follows that the deeds to lands held by the defendants who purchased from Mrs. Theresa Rhodes or from the executors or trustees under the will or who claim under the sheriff's deeds executed pursuant to sales under the deficiency decrees against the executors and trustees conveyed no title and constitute clouds upon the

complainants' title and the complainants bill is not without equity.

The homestead interest of the widow and children of a testator cannot be barred by his will. See Wilson, Executrix v. Fridenberg, 21 Fla. 386; Brokaw v. McDougall, 20 Fla. 212; Scull v. Beatty, 27 Fla. 426, 9 South. Rep. 4; Palmer v. Palmer, 47 Fla. 200, 35 South. Rep. 983.

The three cases first referred to were decided under the Constitution of 1868. This court in Palmer v. Palmer, *supra,* discussed the effect upon the widow's interest in the homestead under the Constitution of 1885. The court speaking through Mr. Justice TAYLOR said: "The effect of the constitution of 1885 in so far as the homestead is concerned where the relation of husband and wife exists, and where there is a child or children, is to compel such homestead to inure to the widow as widow and to the heirs, unless the consent of the wife can be obtained to its alienation in the lifetime of the husband, and where such alienation does not take place compels *intestacy* so far as such homestead is concerned by prohibiting its alienation by will. In the presence of a child or children the homestead cannot be dealt with or effected by a will to any extent whatsoever, either directly or indirectly, and if it cannot be diverted from inurement to the widow and heirs by the direct provisions of a will, it cannot be indirectly diverted from such inurement by the provisions of a will disposing legally of other property outside of the homestead." See also Griffith v. Griffith, 59 Fla. 512, 52 South. Rep. 609; Section 2297 General Statutes, 1906, Florida Compiled Laws, 1914.

A posthumous child of the head of the family who owns a homestead in this State is included among the

heirs of the parent entitled to the exemption provided by
Article X of the Constitution of 1885. Section 2 of
that Article is as follows: "The exemptions provided
for in section one shall inure to the widow and heirs
of the party entitled to such exemption and shall apply
to all debts, except as specified in said section." In
this connection the word "heirs" means those who may
under the laws of the State inherit from the owner of
the homestead." The capacity of a posthumous child
to inherit from its father is undisputed. See Gibson v.
Gibson, 2 Free an's Ch. 223, (22 Eng. Reprint 1173) ;
Trower v. Butts, 1 Sim. & St. 181 (57 Eng. Reprint 72) ;
Hall v. Hancock, 15 Pick. (Mass.) 255; Hill v. Moore,
1 Murphy's Rep. (5 N.C.) 233; Nelson v. Iverson, 24
Ala. 9; Morrow v. Scott, 7 Ga. 535; Smith v. Connell, 17
Ill. 135. Mr. Kent in his Commentaries says: "Posthu-
mous children inherit in all cases in like manner as if
they were born in the lifetime of the intestate and had
survived him." 4 Kent's Com. (13th ed.) 412. The rea-
son of the maxim *"Posthumous pro nato habetur"* lies
according to some authorities in the moral obligation on
the parent to provide for the child, but whatever may
be the reason Lord Hardwicke said "that a child in
*ventre sa mere* both by the rules of the common and the
civil law, is to all intents and purposes a child, as much
as if born in the father's lifetime." See Wallas v.
Hodson, 2 Atk. 115; Bassett v. Bassett, 3 Atk. 203.

If then the property described in the bill constituted
the homestead of Samuel Rhodes at the time of his
death, the interests of his widow and child were not
barred by his will and as to the homestead he must be
regarded as having died intestate.

The bill alleges that at the time of the death of
Samuel Rhodes he owned in fee simple the lands which

were described by blocks and lots according to the plat, and that he occupied it as his homestead; that the property was the "homestead of Samuel Rhodes deecased, and was and is contiguous, lying in a body, and each piece thereof adjacent to some other part or parcel thereof;" that none of the land is located within the limits of any incorporated city or town; "that at the time of the death of said Samuel Rhodes, your oratrix was living with said Samuel Rhodes, deceased, on his said homestead."

These allegations were admitted by the demurrers. These allegations are sufficiently certain to present an issue. In Brandies v. Perry, 39 Fla. 172, 22 South. Rep. 268, this court said: "The use of land for homestead purposes, other than an actual bona fide residence thereon as a home for the occupant and his family is no test by which to ascertain if it is exempt, because it is not made such by the constitution." In McDougall v. Meginniss, 21 Fla. 362, this court said: "In our view the owner is only required by the constitution to live on the land and the whole one hundred and sixty acres is exempt." It is true that McDougall v. Meginniss, *supra,* was decided under the Constitution of 1868, but the language of the Constitution of 1885 relating to homestead and exemptions is practically the same and had been several times construed when the Constitution of 1885 was adopted. The homestead is the "place of the home" of the owner and his family and the Constitution fixes the extent of it at one hundred and sixty acres of land when it does not lie within the limits of any incorporated city or town. So it appears from the bill and admitted by the demurrer that the land was at the time of Rhodes' death occupied by him and his wife as a homestead, and that the land was not within the limits of any incorporated city or town. But it is insisted

that Rhodes had prior to his marriage divided the land into blocks and lots separated by streets and avenues, that he had caused the same to be platted and had sold lots to different persons according to such plat; that after his marriage he and his wife had made conveyances of lots according to such plat; that these transactions showed an abandonment by him of his homestead; at least that it narrowed its extent to the lot or perhaps block upon which he retained his residence, because by the dedication of streets he had separated the "place of his home" from the other portions or parts of his land and could not therefore be said to have resided with his family upon such other portions of his land.

It was definitely held in Brandies v. Perry, *supra,* that where the head of a family lives with his family upon one tract or parcel of land he cannot in order to exempt a hundred and sixty acres as a homestead include in his exemption a tract of land separated from that on which he lives by another tract not owned by him. And in Milton v. Milton, 63 Fla. 533, 58 South. Rep. 718, this court said that "a tract of land detached from or not contiguous to the land claimed as a homestead is not a part of the homestead exemption."

We do not agree with the contention of appellants' counsel that the mere platting of land and the sale of lots according to such plat shows conclusively an abandonment of the homestead by the owner. While a sale of lots bounded by streets and avenues according to a plat which shows such lots so bounded, creates in the purchaser as against the grantor a private right to have such streets remain open for passageways, they constitute mere easements over the owner's land where the purchasers do not own on either side of the street. While a purchaser of a lot according to a plat which shows that

the lot is bounded by a street acquires title to the center of the street on his side he has only an easement over the land at another part of the proposed street where he owns no lot. Therefore the owner may after platting his land, so dispose of lots and blocks as to leave remaining to him a contiguous tract, it may be in a fantastic shape, but nevertheless unbroken and contiguous over which he has merely sold or given an easement of passageway.

The Supreme Court of Kansas in 1873 when the late Judge BREWER was a member of that court said that an easement may be created upon or through land—such as a common road, a railroad or a water privilege—without in any manner affecting its character as a homestead." See Randal v. Elder, 12 Kan. 257.

There is no expression from this court to be found in its opinions that the tract of land constituting a homestead shall be in any particular shape, nor where two or more tracts of land constitute together the one hundred and sixty acres that they shall be contiguous or adjacent one to the other for their full length. It may be that in a case where a man resides with his family upon a very large farm and is called upon to select his homestead that the remainder may be subjected to his debts he would be restrained by a rule requiring a reasonable exercise of the right from selecting his homestead in narrow strips of land running through the entire tract in fanciful, queer, whimsical contortions making a grotesque figure, but there is no reason why the owner of a homestead which lies in a compact usual body may not sell such parts of it as he may desire and retain the remainder for his homestead so long as he does not separate one part of his homestead thus remaining from another by intervening lots or blocks

which he has conveyed to others. See Clements v. Crawford County Bank, 64 Ark. 7.

We are of the opinion that as to the homestead Samuel Rhodes died intestate. That is to say the will was ineffectual to deprive the child of his right to the enjoyment of the estate secured to him by the constitution. The widow not having selected a child's part holds only a dower interest in such of the lots as have not been sold by her or the trustees under the will; as to those we hold that she is estopped from claiming any interest in them upon the principle that having received the benefit of the money derived from the sales she will not now be heard to repudiate them. The property being exempt from forced sale under process of any court the sales under the deficiency decrees conveyed no title. As to the minor who is complainant by his next friend he is entitled to the relief which he seeks. That is to say the cancellation of the deeds recited in the bill so far as they affect his interest. The bill lies on the part of the complainants for the setting aside of the homestead. See Barco v. Fennell, 24 Fla. 378, 5 South. Rep. 9; Section 2527 General Statutes, 1906, Florida Compiled Laws, 1914.

The demurrers were properly overruled and the orders are affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.