C. D. CLARK AS SHERIFF OF CALHOUN COUNTY, AND FLYNN-HARRIS-BULLARD COMPANY, A CORPORATION, *Appellants,* v. ANNIE COX, A WIDOW, AND EVA COX, RUTH COX AND NETA COX, MINORS. BY ANNIE COX, THEIR NEXT FRIEND, *Appellees.*

Opinion Filed June 12, 1920.

1. The Constitution does not expressly require contiguity of lands for the exemptions of a homestead, and as the meaning of the word "homestead" is not defined in the organic provision on the subject, the question whether actual contiguity

is required must be determined in each case on its peculiar facts.

2. A liberal interpretation should be given to the homestead provisions for the benefit of the family, but the beneficent provisions of the Constitution should not be used as a means to defraud.

3. Where a homestead has been acquired, it can be waived only by abandonment or by alienation in the manner provided by law.

4. Where land owned by the head of a family residing in this State constitutes the homestead, and is so occupied and used, the conveyance in fee of a strip 100 feet wide for the use of a public railroad right-of-way through the land does not destroy the homestead character of the land on both sides of the conveyed strip, where the land on both sides of the strip continued to be actually and exclusively used as parts of the home place for homestead purposes and for the support of the family.

An Appeal from the Circuit Court for Calhoun County, C. L. Wilson, Judge.

Order affirmed.

·John H. Carter, for Appellants;

R. H. Buford and Paul Carter, for Appellees.

WHITFIELD, J.—This appeal is from an order enjoining the forced sale of land claimed as a homestead.

The bill of complaint alleges that the complainant, J. M. Cox "is the owner and in possession of certain lands, to-wit, southeast quarter of northwest quarter, the northeast quarter of southwest quarter, and the south half of

northeast quarter of Section 4, in Township 2 north, Range 9 west, and occupying the same as his homestead, and using the said land to produce a livelihood for himself and family; that complainant is the head of a family residing upon said land in said State and county, and that his said family beside himself consists of his wife, Annie Cox, and three minor children, all of whom are dependent upon this complainant and the products of this land for a livelihood, and there is now standing and growing and being a part of said realty certain crops of corn, potatoes, rice, cane and other food and food stuffs; that notwithstanding the fact that the above described land is the homestead of this complainant and comprises only 160 acres which is exempt, under the Constitution and the laws of the State of Florida, to this complainant from forced sale," the defendants have levied an execution thereon and have advertised the same for sale. An injunction was prayed. An order was made restraining the sale of the lands until further order of the court.

By answer the defendant execution creditor avers that the complainants "holdings consist of two separate and non-contiguous parcels, to-wit: a small parcel situated to the north and east of the Marianna & Blountstown railroad, upon which complainant's dwelling house, barns, etc., are located, and another parcel of about 76½ acres, more or less, situated to the south and west of said Marianna & Blountstown railroad, which is enclosed under separate fence, and is not contiguous to the dwelling house tract, and has no house or building upon it. That between said two tracts, and separating them as aforesaid, Rufus Pennington and C. R. Evans, co-partners under the firm name and style of Pennington & Evans, own in fee simple and without condition, reservation or re-

striction whatsoever, a tract containing about six acres,· more or less, described as follows: A. strip 100 feet in width through the S.E.¼ of N.W.¼ and S.W.¼ of N.E.¼, Section 4, Township 2 north, Range 9 west, 50 feet of said strip being on each side of the center of the tract of the Marianna & Blountstown railroad, and said strip is permanently occupied and used by said Pennigton & Evans and their successors." Defendant "denies that the said J. M. Cox was at the filing of the bill of complaint, entitled to have the sale enjoined of that portion of the S.E.¼ of N.W.¼ and S.W.¼ of N.E.¼, and N.E.¼ of S.W.¼, 76½ acres, more or less, Section 4, Township 2 north, Range 9 west, which lies south and west of said tract or strip."

It appears that J. M. Cox, owner of the land, lived thereon with his family and used it as his homestead. Cox and his wife conveyed to "Rufus Pennigton and C. R. Evans co-partners under the firm name and style of Pennington & Evans," "a strip one hundred feet in width through the southeast quarter of northwest quarter and southwest quarter of northeast quarter, Section four, Township two north, Range nine west, fifty feet of said strip being on each side of the center of the track of the Marianna & Blountstown Railroad Co., as now located and operated."

"To have and to hold the above described lands and premises together with all and singular the tenements, hereditaments and appurtenances thereto belonging, or in anywise appertaining unto the said part ...... of the second part ...... heirs and assigns in fee simple, forever."·

It also appears that the railroad track and a country highway were in use on the 100-foot strip across the land when the conveyance of the strip was made; and that the

owner and his family used the land on both sides of the 100-foot strip for homestead purposes, both before and after the conveyance of the 100-foot strip; that Pennington & Evans constructed and owned the railroad whose track was on the 100-foot strip, and that Cox and family lived on the east side of the strip and had a right to pass over the 100-foot strip in going to and from the portion of their land to the west of the strip. Does the conveyance of the 100-foot strip deprive the homesteader and his widow and heirs of homestead rights in the portion of the land on the opposite side of the 100-foot strip from the dwelling house? Assuming that contiguity in land is essential for homestead purposes, does the conveyance of the 100-foot strip by the owners for the purpose stated so destroy the contiguity of the land as to deprive the portion not containing the dwelling of its homestead character?

The Constitution provides that "A homestead to the extent of one hundred and sixty acres of land * owned by the head of a family residing in this State * and the improvements on the real estate, shall be exempt from forced sale," etc. Sec. 1, Art. X.

In Brandies v. Perry, 39 Fla. 172, 22 South. Rep. 268, 63 Am. St. Rep. 163, it was held that "The head of a family residing in this State is not entitled to claim as a part of his homestead, a detached tract of land separated from the homestead by other parcels of land neither owned nor occupied by the owner of the homestead, though such other tract be used and cultivated as a part of the homestead, and both tracts together do not exceed the constitutional limits as to quantity."

In Milton v. Milton, 63 Fla. 533, 58 South. Rep. 718, it was held that "a tract of land detached from or not con-

tiguous to the land claimed as a homestead is not a part of the homestead exemption."

In Shone v. Bellmore, 75 Fla. 515, 78 South. Rep. 605, it was held that "the mere platting of land, not within the limits of an incorporated city or town and sale of lots according to such plat, which land is owned by the head of a family and occupied by them as their homestead, does not destroy its character as a homestead nor conclusively show an abandonment of the homestead by the owner."

The Constitution does not expressly require contiguity of land as a requisite to its homestead character. However, the word homestead has been held to mean "the *home place,* the place where the home is, and such is its legal acceptance at the present day. It is the home— the house and the adjoining land where the head of the family dwells—the home farm, (36 N. H. 136). 'It is the land where is situated the dwelling of the owner and his family.' (16 Wis. 638.) 'A homestead necessarily includes the idea of a residence.' (24 Texas, 224.) It must be the owner's place of residence, the place where he lives. (23 Texas, 502; 10 Minn. 156; 5 Minn. 333; 7 Minn. 518; 42 Texas 443.) It must appear that the lands were actually used, or manifestly intended to be used, as a part of the home of the family. 21 Wall., 486. Waite, C. J." Oliver v. Snowden, 18 Fla. 823, text 835. See also Brandies v. Perry, 39 Fla. 172, 22 South. Rep. 268.

If the rights conveyed for a railroad right of way are in law only a perpetual easement, this would not destroy the actual contiguity or impair the homestead exemptions. Griswold v. Huffaker, 47 Kan. 690, 28 Pac. Rep. 696; Griswold v. Huffaker, 48 Kan. 374, 29 Pac. Rep. 693; Slaugh-

ter v. Karn, —Ky. App. —, 23 S. W. Rep. 791; Gibbs v. Adams, 76 Ark. 575, 89 S. W. Rep. 1008; Allen v. Dodson, 39 Kan. 220, 17 Pac. Rep. 667; Randal v. Elder, 12 Kan. 257; Shone v. Bellmore, 75 Fla. 515, 78 South. Rep. 605; 13 R. C. L. 578.

It would seem that as the Constitution does not expressly require contiguity of lands for the exemptions of a homestead, and as the meaning of the word "homestead" is not defined in the organic provisions on the subject, the question whether actual contiguity is required must be determined in each case on its peculiar facts.   A liberal interpretation should be given to the homestead provisions for the benefit of the family, but the beneficent provisions of the Constitution should not be used as a means to defraud.   Jetton Lumber Co. v. Hall, 67 Fla. 61, 64 South, Rep. 440; Drucker v. Rosenstein, 19 Fla. 191; Pasco v. Harley, 73 Fla. 819, 75 South. Rep. 30.   Where a homestead has been acquired, it can be waived only by abandonment, or by alienation in the manner provided by law. Riggs v. Sterling, 60 Mich. 643, 27 N. W. Rep. 705.

In this case it appears that the conveyance of the 100-foot strip across the land was for the use of a public railroad right of way, that a right to cross the strip in going to and from the portion of the land on the opposite side from the dwelling place was recognized in the owners of the homestead rights and that the land on both sides of the 100-foot strip were continuously and exclusively used for homestead purposes and the support of the family, the whole not exceeding the exempted area.   This being so the land on both sides of the 100-foot strip "were actually used, and manifestly intended to be used, as a part of the home of the family" as set forth in the Oliver

case *supra.* See Grosholz v. Newman, 21 Wall. (U. S.) 481, text 486.

There is nothing to indicate an abandonment of any part of the remaining land as a homestead. On the contrary, a purpose to retain the land on both sides of the alienated strip is evident. In the Brandies and Milton cases, *supra,* the lands excluded had never been a part of or contiguous to the homestead tracts that were allowed as exemptions.

Under the circumstances of this case it must be held that the conveyance of the 100-foot strip across the land for a railroad right of way did not deprive the remaining homestead real estate of its homestead character so as to withhold or abandon the right of exemption as a homestead in the land on both sides of the 100-foot strip. Hodges v. Winston, 95 Ala. 514, 11 South. Rep. 200; 13 R. C. L. 578; Morse v. Morris, 57 Wash. 43, 106 Pac. Rep. 468, 135 Am. St. Rep. 968; Pryor v. Stone, 19 Texas 371, 70 Am. Dec. 341.

Order affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.