78 So.2d 861 (1955)
R.M. BUCKELS, as Sheriff of Osceola County, Florida, and The Pure Oil Co., a corporation, Appellants,
v.
Raymond V. TOMER, also known as Raymond Tomer, and further known as R.V. Tomer, Appellee.
Supreme Court of Florida. Special Division A.
March 24, 1955.
*862 Rogers & Kelley, Kissimmee, for appellants.
Murray W. Overstreet, Kissimmee, for appellee.
SEBRING, Justice.
The appeal is from a final decree in favor of the plaintiff below.
According to the record, the plaintiff and his wife are the owners of certain rural property in Osceola County, Florida, consisting of a tract of land that had been subdivided into blocks and lots by a recorded plat and a tract of unplatted land adjoining the platted tract upon which the family residence is located. Prior to the purchase of the property by the plaintiff certain of the lots in the platted tract had been sold by the plaintiff's predecessor in title. After the purchase of the property by the plaintiff certain other lots in the platted tract were sold by him to third persons. While some of the lots in the platted tract as to which the plaintiff retains title are separated by streets, the plaintiff, in every such instance, owns land on both sides of the streets, as shown by the unshaded portions of the sketch that follows:
*863 
*864 Pure Oil Company, a corporation, recovered a final judgment against the plaintiff and his wife. When the sheriff of Osceola County levied upon the property to satisfy the judgment, the plaintiff filed a homestead claim to all the property. The sheriff recognized the right of the plaintiff to claim exemption as to the unplatted tract of land upon which the home of the plaintiff was located, but refused to recognize the right to homestead and exemption from forced sale as extending to any of the lots in the platted tract.
After the rejection of his claim by the sheriff, the plaintiff brought the instant suit to enjoin the sheriff from proceeding with the sale, upon the ground that he had the constitutional right to claim all the property as his homestead. The defendants below contested the right of the plaintiff to injunctive relief on the ground that the platted lots which had been purchased by the plaintiff were not contiguous to the unplatted tract purchased by him and consequently could not be claimed as homestead. At final hearing, the court below rejected the contention of the defendants and entered a decree enjoining the sheriff and the judgment creditor from selling the property in the subdivision to satisfy the judgment.
The question on the appeal is whether or not the trial court ruled correctly in adjudicating that all of the rural lands of the plaintiff, including the lots in the platted tract, the aggregate of which was less than 160 acres, were contiguous and could be claimed as homestead and therefore exempt from judicial sale to satisfy the judgment.
While the law in respect to what rural property may constitute a homestead has been construed, from the earliest decisions, to require an element of contiguity, Brandies v. Perry, 39 Fla. 172, 22 So. 268; Milton v. Milton, 63 Fla. 533, 58 So. 718; Yowell v. Rogers, 128 Fla. 881, 175 So. 772; it is established in Shone v. Bellmore, 75 Fla. 515, 78 So. 605, 606, that the mere platting of rural property owned and occupied by the head of a family as a homestead, and the sale of lots according to such plat, is not sufficient to destroy the homestead character of such portions of the property as have not been sold, where the unsold portions are "`contiguous, lying in a body, and each piece thereof [is] adjacent to some other part or parcel thereof.'" In respect to the contention of the appellant in the cause that the unsold lands lacked contiguity because of the fact that many of the lots and blocks in the subdivision were separated by streets the court observed that "* * wherever that is the case it appears that the deceased owned the lots or blocks on each side of the street," and rejected the contention of the appellant with the statement: "We do not agree * * * that the mere platting of land and the sale of lots according to such plat shows conclusively an abandonment of the homestead by the owner. While a sale of lots bounded by streets and avenues according to a plat which shows such lots so bounded creates in the purchaser as against the grantor a private right to have such streets remain open for passageways, they constitute mere easements over the owner's land, where the purchasers do not own on either side of the street. While a purchaser of a lot according to a plat which shows that the lot is bounded by a street acquires title to the center of the street on his side, he has only an easement over the land at another part of the proposed street, where he owns no lot. Therefore the owner may, after platting his land, so dispose of lots and blocks as to leave remaining to him a contiguous tract; it may be in a fantastic shape, but nevertheless unbroken and contiguous, over which he has merely sold or given an easement of passageway." (Emphasis supplied.)
We think that the principle stated in the foregoing case is controlling in the case at bar. As will be seen from the sketch of the property involved, the unplatted lands belonging to the plaintiff not only actually abut upon the tract of land in the subdivision designated as Lots 1 to 5, inclusive, of Block E, but also wherever the lands owned by the plaintiff are separated by streets he owns "the lot or blocks on each side of the street." Under the principle laid down in Shone v. Bellmore, *865 supra, the lands of the plaintiff are therefore "`contiguous, lying in a body, and each piece thereof [is] adjacent to some other part or parcel thereof,'" and the fact that the plaintiff may have acquired the property after some of the lots in the subdivision had been sold by his predecessor in title is quite without legal significance.
Some suggestion is made in the brief of appellant that because the subdivision lots held by the plaintiff were never actually used by him for homestead purposes, but were held only for the purposes of speculation or resale, they could not acquire a homestead status, but this contention must also be rejected. For as was stated in Fort v. Rigdon, 100 Fla. 398, 129 So. 847, 848, in respect to rural homesteads: "`We have no authority, if the person who claims the land for a homestead resides thereon, is a resident of the State, the head of a family, and there is no more than 160 acres in the tract, to add any other conditions than those expressed in the Constitution. To say how the homesteader should use his land, whether as a "farm," or for a "saw-mill," or a "grist-mill," or a "carding and fulling mill," would be to impose a judicial condition not found in the Constitution of the State. The Constitution does not prescribe the manner in which the tract shall be used beyond residing thereon.'" And in another instance: "`The Constitution of this State, Section 1, Article 9, exempts a homestead to the extent of one hundred and sixty acres of land outside an incorporated city or town to the head of a family residing in this State, with the improvements on the real estate, without regard to the use that may be made of that portion of the tract not covered by the residence and enclosures.'" McDougall v. Meginniss, 21 Fla. 362.
In a later case it is held that a portion of a homestead tract upon which a boys' school was located was nevertheless exempt, the court saying: "This language is clear, and it is significant that the framers of the Constitution of 1885, when they came to write the homestead and exemption clause for that Constitution, used the language of the Constitution of 1868 on the subject of the homestead's extent, which had been construed by * * * the Supreme Court of Florida, which had held that nothing more was required than for the homesteader to live on the tract to render the whole 160 acres exempt, and the Constitution did not prescribe the manner in which the land should be used beyond residing on it." Armour & Co. v. Hulvey, 73 Fla. 294, 74 So. 212, 214. See also Vol. II, No. I, p. 47, Univ. of Fla. Law Review.
The appellant has failed to make reversible error appear and consequently the decree appealed from should be affirmed.
It is so ordered.
MATHEWS, C.J., and TERRELL and DREW, JJ., concur.