Ms. Trela J. White City Attorney, City of Atlantis Barristers Building 1615 Forum Place, Suite 200 West Palm Beach, Florida 33401
Dear Ms. Trela J. White:
You ask substantially the following question:
May a local government safe neighborhood improvement district created pursuant to s. 163.506, F.S., take over and privatize streets within the boundaries of the district where the streets have been dedicated to the public?
In sum, I am of the opinion:
Although a local government safe neighborhood district, created pursuant to s. 163.506, F.S., may privatize or vacate certain streets within the district, it is not authorized to maintain, control, or repair such vacated or privatized streets. Nor may the municipal police department enforce the provisions of Uniform Traffic Control Law on such streets unless a written agreement has been entered into by the municipality and the parties owning or controlling the streets which provides for reimbursement to the municipality for the actual costs of traffic control and enforcement and for liability insurance and indemnification by the parties owning or controlling such roads.
According to your letter, the City of Atlantis is interested in turning over the administration of its streets and roadways to its local government safe neighborhood improvement district board (district) created pursuant to s. 163.506, F.S.,[1] the boundaries of which are conterminous with those of the municipality. The information supplied to this office indicates that the district would privatize all the streets in the municipality, apparently to restrict access to such streets.
In adopting Part IV, Ch. 163, F.S., the Safe Neighborhoods Act, the Legislature found that among the many causes of deterioration in the business and residential areas of the state were:
[P]roliferation of crime, automobile traffic flow strangled by outmoded street patterns, unsuitable topography, faulty lot layouts, fragmentation of land uses and parking areas necessitating frequent automobile movement, lack of separation of pedestrian areas from automobile traffic, lack of separation of vehicle traffic lanes and railroad traffic, and excessive noise levels from automobile traffic.[2]
The grant of powers in Part IV, Ch. 163, F.S., to the neighborhood improvement districts established thereunder is:
[T]o guide and accomplish the coordinated, balanced, and harmonious development of safe neighborhoods; to promote the health, safety, and general welfare of these areas and their inhabitants, visitors, property owners, and workers; to establish, maintain, and preserve property values and preserve and foster the development of attractive neighborhood and business environments; to prevent overcrowding and congestion; to improve or redirect automobile traffic and provide pedestrian safety; to reduce crime rates and the opportunities for the commission of crime; and to provide environmental security in neighborhoods so they are defensible against crime.[3]
Crime prevention through environmental design is one of the functions of the neighborhood improvement district. Pursuant to s.163.513, F.S., the district board is to collect data on the types, frequency, severity and location of criminal activity occurring in the district and to provide an analysis of crimes related to land use and environmental and physical conditions of the district.[4]
The board is to determine from such surveys and data collected "where modification or closing of, or restriction of access to, certain streets would assist crime prevention and enhance neighborhood security for property owners and residents."[5]
(e.s.)
I find nothing in Part IV, Ch. 163, F.S., however, which indicates that it was the Legislature's intent in enacting the Safe Neighborhoods Act, to grant a neighborhood improvement district the authority to close public access to all streets within a municipality by privatizing such roadways. Such a result would appear to be inconsistent with the declaration of intent by the Legislature that the functions of such districts are, among other things, to improve and redirect automobile traffic strangled by outmoded street patterns and to close or restrict access to certain streets to assist in crime prevention.
In addition, you state that a review of the city plats indicates that the municipality does not own the streets within its municipal boundaries. The streets were dedicated to the public and apparently were accepted by the municipality through its approval of the recording of the plats.
The effect of a dedication does not operate as a grant of the dedicated property; legal title remains in the grantor or his grantees while the public takes the beneficial use of the property. Thus, effectively, the public acquires only a right of easement in trust so long as the dedicated property is used for the intended purpose of the dedication.[6] Absent a contrary showing not made evident here, legal title would pass to the grantees of the lots sold which abut the street.[7] Their title would extend to the center of the street subject to the public easement.[8]
The municipality may abandon the public's easement rights to the streets provided that the streets are no longer needed[9] and the municipality is acting in the interests of the general public welfare.[10] Pursuant to s. 163.514(13), F.S., the authority to vacate streets, with the concurrence of the municipality and, if necessary, the Department of Transportation, may also be exercised by a neighborhood improvement district.[11]
The authority to privatize a street, however, does not in and of itself grant the district the authority to maintain and regulate private streets.[12] Nor can a municipality grant an interest in the property greater than that which it possesses. Upon abandonment or vacation of the public right of way, title to the center line of the street is vested in the property owners abutting the street, free from the public's easement's rights to the street.
While s. 163.514(13), F.S., grants local government neighborhood improvement districts the authority, with the concurrence of the municipality and, if necessary, the Department of Transportation, to plan, privatize, vacate or close streets, it does not authorize such a district to control, maintain, or repair such vacated or privatized streets.[13]
Section 163.514(3), F.S., which you also refer to in your letter, only authorizes the board of a neighborhood improvement district to acquire, own, lease, maintain, improve, property and facilities to which it holds title and to acquire licenses, easements and options.[14] Inasmuch as the district does not hold title to such privatized or vacated streets, this section would not authorize the district to maintain or improve such streets.
Moreover, once such streets are privatized and no longer open to the general public, the municipal police department is not authorized to enforce the provisions of the Florida Uniform Traffic Control Law on such streets unless a written agreement has been entered into by the municipality and the party owning or controlling the roadway.[15] This office has previously stated that such an agreement must include provision for the reimbursement to the municipality for the actual costs of traffic control and enforcement and for liability insurance and indemnification by the party owning or controlling such roads.[16]
Accordingly, I am of the opinion that while a local government safe neighborhood district created pursuant to s. 163.506, F.S., may privatize or vacate certain streets within the district, it is not authorized to maintain, control, or repair such vacated or privatized streets, the ownership of which reverts to those property owners whose property abuts the street. Nor may the municipal police department enforce the provisions of Uniform Traffic Control Law on such streets unless a written agreement has been entered into by the municipality and the parties owning or controlling the streets which provides for reimbursement to the municipality for the actual costs of traffic control and enforcement and for liability insurance and indemnification by the parties owning or controlling such roads.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 163.506, F.S., authorizes the local governing body of a municipality to establish a local government neighborhood improvement district by enactment of an ordinance. Such ordinance may, among other things, authorize the district to levy an ad valorem tax of up to 2 mills annually and to use special assessments pursuant to Ch. 170, F.S., to support planning and implementation of district improvements.
[2] Section 163.502(1), F.S.
[3] Section 163.502(3), F.S.
[4] Section 163.513(1) and (2), F.S.
[5] Section 163.513(3), F.S.
[6] See, AGO 78-118 and authorities cited therein.
[7] Compare, Peninsular Point, Inc. v. South Georgia Dairy Co-op,251 So.2d 690 (1 D.C.A. Fla., 1971) (plat dedicating street to perpetual use of public but reserving street to grantor whenever abandoned by public which was referred to in deed of abutting property manifested intention that grant or conveyance of abutting property did not extend to center of street and grantor had better title to street upon its abandonment).
[8] Id. And see, Burns v. McDaniel, 140 So. 314 (Fla. 1932); Buckels v. Tomer, 78 So.2d 861 (Fla. 1955); Bonifay v. Dickson,459 So.2d 1089, 1095 (1 D.C.A. Fla., 1984) ("The general rule is that the abutting lot owners own fee title to the middle of a dedicated street").
[9] See, s. 167.09, F.S. 1971, authorizing municipalities to vacate municipal streets, and s. 166.042, F.S., which states:
It is the legislative intent that the repeal . . . of chapters 167 . . . of Florida Statutes shall not be interpreted to limit or restrict the powers of municipal officials, but shall be interpreted as a recognition of constitutional powers. . . . It is, further, the legislative intent that municipalities shall continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above, but shall hereafter exercise those powers at their own discretion, subject only to the terms and conditions which they choose to prescribe.
And see, AGO 75-171 concluding that the permanent vacation of a street should be accomplished by ordinance. Cf., s. 336.10, F.S., requiring a board of county commissioners to publish notice and hold a public hearing on the advisability of vacating a road under its control.
[10] See, Roney Investment Company v. City of Miami Beach,174 So. 26 (Fla. 1937) (city has no power to sell or barter streets which it holds in trust for benefit of public, and cannot vacate street for benefit of purely private interest); Sun Oil Company v. Gerstein, 206 So.2d 439 (3 D.C.A. Fla., 1968) (wide latitude of discretion is accorded to discontinue any street and exercise of that discretion will not be disturbed in the absence of a clear abuse or unless there is an invasion of property rights).
[11] And see, s. 163.513(3), F.S., authorizing a district board to determine, from surveys and other data collection techniques, areas within the district where modification or closing of, or restriction of access to, certain streets would assist crime prevention and enhance neighborhood security for property owners and residents.
[12] See, Webster's Third New International Dictionary Privatize p. 1805 (unabridged ed. 1980) (to alter status from public to private control).
[13] Compare, s. 163.508(3)(c), F.S., which authorizes property owners' association neighborhood improvement districts "to lease, maintain, repair, and reconstruct any privatized street, land, or common area within the district upon dedication thereof to the association." And see, s. 163.513(3), F.S., authorizing a board to determine areas within the district where modification or closing of, or restriction of access to, certain streets would assist crime prevention and enhance neighborhood security for property owners and residents.
[14] And see, s. 163.513(6), F.S.
[15] Section 316.006(2)(b), F.S.
[16] See, AGO 88-5.